Young Men's Christian Association of Germantown, Appellant, *v.* Philadelphia.

Argued April 2, 1936. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Franklin S. Edmonds,* of *Edmonds, Obermayer & Reb-
mann,* with him *Shields, Clark, Brown & McCown,* for
appellant.

*Knox Henderson,* with him *Robert von Moschzisker,
J. J. Elcock,* Assistant City Solicitor, and *Joseph Sharf-
sin,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

The appellant, the Young Men's Christian Association
of Germantown, seeks to have its real property, consist-
ing of the building in which its organized activities are

carried on, declared *wholly* exempt from real estate taxes, on the ground that it is a public charity and entitled to such exemption under the Act of July 17, 1919, P. L. 1021, as last amended by the Act of April 30, 1925, P. L. 388, subsequently repealed and superseded by The General County Assessment Law of May 22, 1933, P. L. 853. The Board of Revision of Taxes of the County of Philadelphia declined a total exemption of the property for the years 1928 and, thereafter, granted an *exemption as to three-fifths of the assessed valuation* of the property, and *assessed the remaining two-fifths for taxation.*

The taxpayer appealed from the order to the court of common pleas, averring it is a purely charitable institution and entitled to total exemption. The city filed an answer, not denying the charitable nature of the association but averring that its operation of a lodging and rooming-house business, from which large revenues are derived, deprives it of the right to total exemption. This was the apparent basis for the order of the Board of Revision of Taxes, holding two-fifths of the property taxable.

At the hearing in the common pleas appellant presented evidence showing the value and extent of its property, the purposes for which the association was organized, and the manner of its functioning. The city offered no evidence. The chancellor made extensive findings of fact and conclusions of law, and entered a decree of total exemption from taxation. The court en banc refused, however, to abide by the conclusions of the chancellor, sustained the city's exceptions, and reinstated the order of the Board of Revision of Taxes. This appeal followed.

Appellant has been carrying on its work in Germantown and vicinity for over sixty years. It received its charter in 1872 and for many years was located on Germantown Avenue. It undertook the construction of its new building in 1927, on Greene Street, and occupied the premises on August 1 of that year. The building has a

90-foot frontage and extends backward for 305 feet. It has a front and rear access. The premises, both land and buildings, represent an investment of nearly $700,000. About $460,000 was raised by public subscription; $240,000 was borrowed and is secured by a mortgage. The first floor houses the offices of the association, social and locker rooms for its members, and a swimming pool. On a mezzanine below the first floor are handball courts, and below them a boiler room. On the second floor, in front, are class rooms for religious and educational meetings; behind these are kitchens for serving luncheons and dinners at functions held in the class rooms. Behind the kitchens are gymnasiums, a billiard room, and bowling alleys. Also on this floor is located a small lunch counter for the use of members engaged in athletic activities. The other three floors of the building, the third, fourth and fifth, are wholly given over to the dormitory rooms maintained by the association, 128 in number, for the benefit of members. At the rear of the building are tennis courts and a space for parking cars.

The purposes and activities of the countless Young Men's Christian Associations throughout the country are well known. The object of the association, as expressed in its charter, is "the moral and intellectual improvement of the young men" in the vicinity in which it operates, and, as stated in its constitution and by-laws, adopted in 1885, the purpose for which it was formed is "the spiritual, mental, social and physical improvement of young men."

The membership of the Germantown Y. M. C. A. consists of about 2,100 boys and young men, of whom 1,000 are under 17 years of age. There is no religious qualification for membership. Control of the association is vested in a board of managers, who are elected by members with voting privileges, and serve without compensation. The officers of the board of managers select a general secretary, a full-time, paid employee, who has actual charge of all the activities of the association.

Under him are paid under-secretaries who supervise the various departments of its work. The association ministers to the physical, social, educational and religious needs of boys and young men, affords them physical training and offers them recreation in games and sports, conducts classes in public speaking, salesmanship, and sociology, and other high school courses, encourages social contacts between its members in the form of club meetings, lectures and small entertainments, and offers religious instruction in Bible classes and devotional meetings.

The president of the board of managers and the general secretary of the association testified in behalf of its claim for exemption. They pointed out the effort which the association makes to reach and care for boys and young men who are strangers in the city, many of them in search of employment. The contention is that it is primarily for this purpose that the association maintains its dormitory and that in this way it is best able to care for young men who have no homes in Philadelphia. No person is admitted to the dormitories who is not a member of the association; but there is no limitation on admission to membership, and the applicant for lodging privileges is required to join the association. If personally unobjectionable, he is immediately accepted as a member. He is required to sign a membership application, to pay the annual membership dues, and to agree to abide by certain rules of the dormitory. He must give references, both personal and business, and supply other information helpful to the association in caring for his needs as an individual. An effort is made to place him in contact with a church of his religious preference. He is encouraged to join in the activities of the association of every sort. If possible, he is induced to open a savings account. If unemployed, an effort is made to get him a job through the association's free employment bureau. The general secretary of the association testified that if a new member when enrolled

prefers not to live in the dormitory, the association will endeavor to procure lodging for him in some neighborhood boarding house, but dormitory residence is encouraged.

The rates for rooms or beds in the dormitory are moderate. At the time of the hearing they varied from $1.50 to $6.50 a week. The average price was between $5 and $5.50 a week, but this was more than rates in boarding houses in the vicinity, which averaged $4.75 a week. Resident members, it is true, have the free use of gymnasium and swimming pool, for which a charge is made to nonresident members. For all other facilities an extra charge is made to all members. The scheduled rates, it was stated, are subject to exceptions, which are freely made in the case of those who, by reason of unemployment or diminished income, are unable to pay the full rate. At the time of the hearing, twelve of those living in the dormitory were unemployed and presumably paid nothing. The evidence showed that about half of the 94 lodgers were over thirty years of age, eighteen of them over forty and twelve of them had no employment; that five were making $15 per week, about half between $20 and $25 per week, and nine had salaries of $40 a week or more.

Statements of profit and loss of the appellant's operations for various years, from 1929 to 1933, were admitted in evidence. From these it is impossible to determine whether or not the operation of the dormitory resulted in a net profit. It is clear that room rentals received by the association supply a very substantial part of its operating income; in some years this amounted to nearly fifty per cent. However, in each year the association itself operated at a deficit of income under expenses, without any reserve for depreciation of plant and equipment. These annual deficits are made up by contributions.

Article IX, section 1, of the Constitution authorized the General Assembly to exempt from taxation: (1)

"public property used for public purposes"; (2) "actual places of religious worship"; (3) "places of burial not used or held for private or corporate profit"; (4) "institutions of purely public charity," and (5) "real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines." It is only with No. 4 that we are now concerned.

In *Wagner Institute v. Phila.*, 132 Pa. 612, 19 A. 297, this court said: "Article IX, of the Constitution grants no exemption, it is restrictive only; and the Act of May 14, 1874, P. L. 158, passed to carry out the intention of the Constitution, in enumerating the 'institutions of learning, benevolence, or charity' intended to be included, restricts the exemption to the institution itself, 'with the grounds thereto annexed, and necessary for the occupancy and enjoyment of the same.'" In *White et al. v. Smith,* 189 Pa. 222, 42 A. 125, Mr. Justice DEAN, speaking for this court, said: "No matter what was the legislative language [in the Act of 1874] the exemption could not extend to any property not a 'purely public charity.' This was not so clear to taxpayers, for it is seldom any one, whether individual or association, displays any great alacrity in rendering 'unto Cæsar the things that are Cæsar's.'"

However, the inclusion by the legislature in the exemption Act of 1874 and subsequent exemption acts, in practically the same language, of "institutions of learning" has been acquiesced in; and in *Donohugh's App.,* 86 Pa. 306, this court adopted the opinion of the court below (Common Pleas No. 2, Philadelphia) in which it was declared that the legislative construction of a constitutional provision, when it is a question, not of private right, but of public policy, must be held binding and conclusive until shown clearly and beyond all question to be in violation of the Constitution.

The Act of 1874 was superseded by later acts like it, but it has now been superseded by subsection (c) of sec-

tion 204 of the Act of May 22, 1933, P. L. 853, exempting the following property from taxation: "All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, that the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose." This is the same as the Act of 1874, except for the above proviso, which however does not render inapplicable the decisions of this court interpreting the Act of 1874.

This is the question before us: Conceding that the plaintiff is an institution of benevolence or charity, is the dormitory maintained by it, in the manner herein set forth, so clearly "necessary for the occupancy and enjoyment" of the part of the building devoted to plaintiff's work of charity or benevolence as to entitle it to exemption from paying taxes on that dormitory? As stated above, there is no limitation on admission to membership in plaintiff association. Anyone applying for a room can for a nominal sum obtain membership and then for a substantial price he can obtain lodging. (By agreement, our decision will determine taxability for 1929 and thereafter so long as the use of the dormitories continues as at present.)

"The claimant of exemption from taxation must show affirmative legislation in support of his claim, and his case must be clearly within it": *Phila. v. Barber,* 160 Pa. 123, 126, 28 A. 644; *Dougherty, Trustee, v. Philadelphia,* 314 Pa. 298, 301, 171 A. 583. It is true that in the instant case the findings and conclusions of the chancellor were in appellant's favor, but where, as here, his associates of the court in banc refused to abide by them and found otherwise, his conclusions cannot have the

same weight attached to them as would ordinarily be the case: *Belmont Laboratories, Inc., v. Heist, et al.,* 300 Pa. 542, 151 A. 15. Particularly is this so where the issue must be determined from reasoning or inferences drawn from undisputed facts: *Hamilton et al., v. Fay,* 283 Pa. 175, 128 A. 837; *Kirmse et al., v. Adler et al.,* 311 Pa. 78, 166 A. 566.

In the light of applicable decisions of this court, appellant has fallen short of sustaining the burden imposed upon it in order to justify its present claim to exemption. In all our decisions on this subject there can be discerned as a prerequisite to the taxation exemption of an institution claiming to be benevolent or charitable that it, or the portion of its property, in respect to which exemption is claimed, must possess an eleemosynary characteristic not possessed by institutions or property devoted to private gain or profit. What is "given" must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered. There must be facts which justify a finding that the "actual use and occupation" of the premises is primarily for the designated charitable object and not largely for commercial purposes.

In *Episcopal Academy v. Phila.,* 150 Pa. 565, 25 A. 55, the question concerned the exemption of a denominational school, from which no profit was derived and none of whose students paid as much for tuition as in other schools of like grade, whereas many paid only a half-rate and some nothing at all. Moreover, all applicants who desired were admitted at half-rate and were placed on the free roll when vacancies permitted. An exemption from taxation was permitted in that case. This court said: "It may be safely said that whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity. In every such case, as the public is the beneficiary, the charity is a public charity. . . . The education of youth and the support of schools are for the advancement of

public good, and money given for such purposes was recognized in England as given for a charitable use, before the statute of 43 Elizabeth. . . . The Act of 1874 exempts from taxation such schools as are supported at the public expense, and such others as are founded, endowed and maintained by public or private charity."

In *Philadelphia v. Penna. Hospital for the Insane,* 154 Pa. 9, 25 A. 1076, a municipal claim was filed for water pipe against a portion of the land owned by a hospital for the insane. It appeared that the managers of the hospital maintained upon the land in question a building reserved exclusively for the use of patients paying a higher rate than any others. The object of the trustees in maintaining this department was to make a profit, but no actual profit was realized after taking into consideration the value of the ground and improvements and the cost of maintenance. The apparent profit was used in extending the hospital's capacity for good among the destitute members of the community, and no portion of it enured to the benefit of any person concerned in administering the charity. It was held that the property was exempt from taxation and that the municipal claim could not be sustained.

The decisions in those two cases and in the case of *Phila. v. Women's Christian Assn.,* 125 Pa. 572, 17 A. 475, were the subject of some animadversion by this court in the case of *White v. Smith* (supra), where Mr. Justice DEAN, speaking of these cases, said: "They go in the direction of exemption to the uttermost limit of such construction. In the *Women's Christian Association Case* . . . about one-seventh of the gross expenses were charitable contributions, and six-sevenths were paid by those who had meals, board or lodging. . . . It was held to be a purely public charity, and exempt mainly on the ground that it was free from any taint of corporate or private gain. I doubt if the decision can be sustained on this ground alone; but the facts

that board and lodging were furnished by the corporation at less than actual cost to a worthy class, and to some of them free, and that the deficiency was made up of voluntary contributions, would perhaps warrant the conclusion that the association was purely a charity. But it will be noticed, how narrow was the margin between gross expenses and gross receipts from boarders; if they had been equal or if the receipts from that source had exceeded the expenditures, it would have been difficult to discern the element of charity in the association, for there would have been no place for voluntary contributions."

In the case at bar there is no proof that the lodging was furnished by the plaintiff association at less than actual cost. There is nothing showing that the expenditures in maintaining these lodgings exceeded the gross receipts from them. Even if such facts were shown, it would not follow that the dormitories of the plaintiff's building were a public charity. In some of the earlier opinions of this court discussing tax exemption of alleged charitable institutions the latter are sometimes described in language which fails to furnish a practicable formula for determining in every instance whether an institution falls within the classification of one "of purely public charity." A judicial desire to be liberal toward institutions which are doing praiseworthy public work has sometimes led the courts to invest the word "charity," as used in the above excerpt from the Constitution, with a meaning not warranted either lexicologically or by a consideration of the ideology of the constituional provision invoked. Webster's New International Dictionary, 2d edition, defines a "charity" (in the institutional sense) as "an organization or institution engaged in the free assistance of the poor, incapacitated, distressed, etc." Under this definition the characteristics of an organized charity are: First, whatever it does for others is done free of charge, or at least so

nearly free of charge as to make the charges nominal or negligible; second, that those to whom it renders help or services are those who are unable to provide themselves with what the institution provides for them, that is, they are legitimate subjects of charity. For example, if some liberally-disposed person would erect and maintain a dormitory to provide free lodging for well-to-do people, his lodging house could not properly be called a charitable institution. If a person built a lodging house to provide lodging for any personally unobjectionable individuals who might apply, whether they were self-supporting or impoverished, at a cost to those individuals which would yield no profit to the proprietor, such a lodging house would not be a charitable institution. Several years ago there was in New York City an hotel which offered lodging to all who were able to pay for it fifteen cents a day. It was not a charitable institution. If a person conducted a lodging house at a profit, but devoted all the profits to the amelioration of the condition of the admittedly poor, his lodging house would not be a charitable institution. The fact that all the net proceeds of a business are used for charitable purposes does not make that business a charitable institution. If any business is manifestly commercial in character, it is not relieved of that classification simply because its earnings are devoted to charity. A tax exemption based on such reasons would be administratively impracticable and lead both to injustice and fiscal confusion.

The lodging offered by the Germantown Y. M. C. A. is not offered free of charge nor only to those who would be classed as poor. The part of the Germantown Y. M. C. A. which contains lodging facilities is primarily commercial in character. It competes with lodging houses which are *avowedly* commercial in character. The fact that the environment is religious, and mentally and morally uplifting, does not alter the fact that the renting of its rooms is substantially like the renting of rooms in other lodging houses. Whether or not the plaintiff

association makes any profit on the rental of these rooms is wholly immaterial. Many lodging houses to-day may possibly be operating at a loss, but they do not become "institutions of purely public charity" the moment the final figures on their balance sheet have to be set out in red ink. Furthermore, a lodger who can pay from $1.50 to $6.50 a week (the average here being about $5.00 per week) for lodging cannot be classed as poor, or as being an object of charity, and such lodgers would doubtless resent being so characterized. About one-half of the lodgers in the Germantown Y. M. C. A., as above pointed out, have incomes of nearly $100.00 per month. Several have incomes of $40.00 per week. The fact that some of the lodgers had no employment at the time of the hearing in this case, and were being "carried along" by the institution does not give the lodging department of the association the character of a public charity. They were at least under the obligation to pay as soon as they might be able to. It is probable that in these times other lodging houses extend credit to unemployed guests.

Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. There are substantial reasons why an institution wholly devoted to public charity should be exempt from taxation, since one of the duties of the government is to provide food and shelter for the poor. Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a "quid pro quo" for its services in providing something which otherwise the government would have to provide. Just

as the exemption of the property of a municipality is founded on the fact that the municipality is a governmental agency of the State, vested by the State with a part of its sovereignty, and employed in aiding the State in matters of government and the execution of its laws, so likewise the exemption from taxation of institutions of public charity is founded on the fact that such a charity is assuming a share of the public burden. The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities. It is therefore just that an institution which assumes pro tanto the taxpayer's burden should be relieved of its own tax burden.

By no process of legitimate reasoning can the conclusion be reached that the plaintiff association in maintaining dormitories and renting rooms therein at an average price of $5 a week, to persons able to pay this and even higher prices, is thereby maintaining an institution of "purely public charity." If the plaintiff should build on an adjoining lot another dormitory capable of housing, say, 500 lodgers, and rooms therein were rented as the plaintiff now rents rooms in its dormitories, its claim for exemption from taxation of the new dormitory would, of course, be untenable and yet no more so than the claim from exemption on the dormitory in its present building. If it can successfully claim exemption on its dormitories, it could with equal plausibility claim exemption on a restaurant or cafeteria or barber shop which it might operate commercially in its building. Nor is the contention well supported that the maintenance and operation of these dormitories is *necessary* for the carrying on of the essential work of the association or for its "occupancy and enjoyment" of the remainder of its building. Counsel for appellant contend that the dormitories "were essential in the carrying out of the association's charitable activities, that these dormitory rooms enabled the association to provide a comfortable, decent home, surrounded by proper influ-

ences, to men coming to the city for employment or those having no homes in the city. Being away from home, these men are particularly in need of moral, spiritual and physical guidance and protection and by being able to provide a home for them in the building, the workers of the association are able to reach and minister to their needs and wants, and to establish contacts with them, in a way which would be impossible if these men were living in rooming houses, scattered throughout the vicinity." Should this argument be accepted, it would lead to legally unacceptable conclusions. Not only could the plaintiff association build a lodging house large enough to take care for a reasonable but substantial rental of every single male in its vicinity and claim tax exemption on the ground that thereby it was the better able to minister to the moral, spiritual and physical wants of its lodgers, but every other institution of benevolence or charity in this Commonwealth could do likewise. Such institutions could maintain on a commercial basis restaurants, barber shops, golf links, baseball parks, billiard and pool rooms, and other establishments where young men like to congregate and then claim exemption from all taxes on such establishments on the ground that through them the institution could maintain closer contacts with those young men whom it desired to uplift spiritually. Even the most praiseworthy institutions must expect to support the government by paying taxes when it engages in commercial activities no matter how it uses the net proceeds of such activities.

Appellants place much emphasis on the decision of the Superior Court in the case of *Mercersburg College v. Mercersburg Boro.,* 53 Pa. Superior Ct. 388. In that case those who sought to tax pro tanto the college property showed that the college maintained a certain store in one of its buildings. As to that store, the Superior Court said: "No rent for the room is received by the college, the apartment occupied is a small one and we do not find sufficient reasons under the evidence for holding

that the room is leased or occupied by the college as claimed by the appellants." An issue was also raised as to the taxation of four acres of land, leased for 99 years by the college from the Theological Seminary of the German Reformed Church. As to that the Superior Court said: "The charter of the Theological Seminary is not in evidence, but we may infer from all that appears in the case that the property was held for educational purposes and was transferred to the plaintiff to more effectually carry out the objects of its owner." Another parcel as to which the question of taxation was raised was 75 acres of land used as a truck garden and farm. As to that the Superior Court, sustaining the court below, said: "That part used for agricultural purposes and for a truck garden is not exempt from taxation. Such use of the property is convenient and perhaps profitable but in no sense a necessary or usual adjunct of an educational institution." The position we are taking in the case at bar is entirely consistent with the position of the Superior Court in the *Mercersburg College Case.*

We hold that plaintiff, in asking for tax exemption on its dormitories, has failed to maintain the burden of proof resting upon it. Our decision here is in harmony with the decision of this court in *Sunday School Union v. Phila. et al.,* 161 Pa. 307, 29 A. 26. In that case a bill was filed to restrain the collection of a tax. A master was appointed and he after a hearing found that the object of the organization was "to establish and maintain Sunday schools and to publish and circulate moral and religious publications." It used all its capital and income for the promotion of the objects stated. The managers were compelled to place the publication operations of the society upon a self-supporting basis. It sold publications not issued by it in order to aid it in making its business self-supporting. The society employed over one hundred missionaries on salaries, whose duty it was to visit families, and get them interested in religion, and

persuade them to go to church. The master recommended a decree in favor of the plaintiff. The court below sustained exceptions to the master's report and entered a decree dismissing the bill. This court, in an opinion by Mr. Justice DEAN, affirming the court below, said: "Conceding the fact that the society is an 'institution of purely public charity,' and as such exempt from taxation, it seems to us such an institution may, as an aid to the accomplishment of its primary object, carry on a business, or use part of its property for a business purpose, which renders such business or such part of its property taxable. . . . They established and maintained upon one of the most eligible and valuable sites of the city, a book-store for profit. . . . Nor does the fact that the profits gathered on the counter of the book-store are devoted to the primary object of the charity, which is purely public, in any degree affect the character of the trading or commercial enterprise. Every dollar the society expends is some charitable contributor's gains or profits from some business not charitable; if such contributor devoted the whole of his profits from the sale of dry goods, groceries or books to promote this particular charity, that fact would not make the source of such profit a purely public charity. . . . It is clear, from the evidence here, that the city did not tax any portion of the funds paid by pious and benevolent contributors; it sought only to collect a tax from that part of the business which was purely commercial. And there is no injustice in this, nor any harshness. . . . Why should not this business pay its fair proportion of the taxes necessary to the paving of streets, construction of sewers, furnishing of light and water, maintaining a fire department, supporting a police force, and other municipal objects? To exempt this book-store from taxation to the amount of $2,405 each year, is in effect a shifting of that much of an individual's burden to the shoulders of the public. If the society does not pay it, the general public must; another individual dealer in the same business

must pay his full share of taxation, and then his share of what his rival ought to pay." Mr. Justice DEAN then points out that other institutions of a like character, have for years followed a system of taxation whereby the mercantile part of the business was taxed, and the "purely public charity" part exempted. He cited The Presbyterian Board of Publication being assessed at $260,000, whereof $60,000 was exempted, and the Young Men's Christian Association assessed at $400,000, of which $210,000 was exempt. Mr. Justice DEAN, after citing the section of the Constitution giving the General Assembly power to exempt from taxation . . . institutions of purely public charity, said: "That by no judicial rule of construction can these words be made to mean that a commercial enterprise is exempt because the whole profit of it goes into the treasury of, and it is carried on by, a purely public charity. In so far as the institution is charitable, and its revenues are derived from the contributions of the charitable, it is protected by the constitution. But if such institution sees fit to engage in trade for the purpose of increasing its revenue, or making any part of its business 'self-supporting' the trade part of its business can be taxed, and ought to be." The court said further in that case: "As to whether the proportions exempt and taxable have been correctly determined, that is a question which we, in this proceeding, have nothing to do. Any complaint on that score can only be heard on appeal from the decision of 'the Board of Revision of Taxes.' "

The ruling in that case was expressly followed by the Superior Court in *Christian Association of the University of Pennsylvania v. City of Philadelphia*, 75 Pa. Superior Ct. 516. In that case the association occupied property at 3905 Spruce Street, and maintained thereon an international students' house, and in the rear maintained a stable. The purpose of the maintenance of the house was to provide a home house for a large number of foreign students under Christian influence. The lower

court found that the association was an institution of public charity, founded and endowed and maintained by private charity. It was operated at a loss, and the deficit each year was made up by the contributions of its friends. The Board of Revision of Taxes assessed the property for taxation for the year 1918 at forty thousand dollars, but found that sixteen thousand dollars in value was exempt. The association filed a bill in equity asking that it be declared to be entirely exempt from taxation. In that case the Superior Court, in an opinion by Judge TREXLER, stated: "It is clear that to exempt the whole property it must be in its entirety actually used and occupied for public and private charity. . . . Property which is not used directly for the purposes and in the operation of the charity, but for profit, is not exempt, and the devotion of the profit to the support of the charity will not alter the result of this class of cases."

In the recent case of *Dougherty, Trustee, v. Phila. et al.,* 314 Pa. 298, 171 A. 583, this court held that the sale of tobacco, candy and refreshments to the community in general which makes use of an auditorium in a charitable school for children, is outside the function of the conduct of the school, and subjects the building to taxation in part, and that where a building is used both as the residence of the rector of a church, and as the residence and office of the rector acting as principal of a school adjoining the building, so much of the building as is used as a rectory is taxable. In that case this court, speaking through Mr. Justice LINN, said: "It has been uniformly held, in the construction of the statute [exempting from taxation institutions of purely public charity], that exemption does not result from the fact that profits, realized in what may be called the business activity of the institution, are devoted to its charitable purposes: *American Sunday-School Union v. Phila.,* 161 Pa. 307, 29 A. 26; *U. of Pa. Christian Assn. v. Phila.,* 75 Pa. Superior Ct. 516." In the same opinion the following

is quoted from the case of *Phila. v. Barber,* 160 Pa. 123, 28 A. 644: "Part of the building is used solely by the church, and part is rented out for school purposes. The rooms being all under the same roof makes no difference in principle. The parts rented and producing income are liable to taxation. There is in fact no express warrant in the act for dividing the building for purposes of taxation and exempting any part of it when other parts produce income. But such division was sustained by Judge Allison in *Association v. Donohugh,* 7 W. N. C. 208, upon grounds of equity and the broad intent of the statute and has been received with general acquiescence."

The view we have herein taken of the question before us is in accord with the views of the appellate courts in many other states on the same or similar questions. In *State ex rel. St. Louis Young Men's Christian Assn. v. Gehner, City Assessor et al.,* 11 S. W. (2d) 30, (1928), the Supreme Court of Missouri held that Y. M. C. A. dormitories, rooms in which were rented to "transients," were taxable. That court emphasized the fact that rooms were rented to both members and nonmembers of the association, but we do not entertain the view that the fact of association membership or nonmembership of those renting rooms is material. The pivotal question is whether or not the renting of the rooms is fundamentally a commercial transaction. The Supreme Court of Missouri said in that case: "The furnishing of meals and rooms free of charge may well be termed charity; but the renting of those rooms to persons not members of relator, the furnishing of meals to persons not members of relator, and the operation of a barber shop, tailor shop, and soda fountain for all those who cared to patronize them, are business enterprises; it cannot be said that a building used for such purposes is 'used exclusively for religious worship, for schools, or for purposes purely charitable.'" The properties were held not exempt from taxation.

In *St. Louis Y. M. C. A. v. Gehner, City Assessor et al.*, 47 S. W. (2d) 776 (1932), the Supreme Court of Missouri refused to allow exemption even though all the transactions were with members of the association. The court said: *"The statute does not exempt property because its use is limited to members of an organization. . . . It is clear from the record that plaintiff is, in effect, conducting hotels or boarding houses* [italics supplied]. But it argues that the business creates 'contacts with large numbers of young men,' thereby affording them an opportunity of participating in its activities for 'the improvement of the spiritual, mental, social and physical condition of young men, and for that reason the business is pure charity within the meaning of the tax exemption statute.' It further contends that some of the young men may avail themselves of the opportunity. *These contentions may be conceded, and still the property is not exempt for the reason the statute does not exempt property that may be used for purposes purely charitable, but exempts property that is exclusively used for such purposes."* (Italics supplied.) That court quoted the following from *State ex rel. v. Board of Assessors*, 52 La. Ann. 223, 26 So. 872, loc. cit. 876: *". . . If the property of the association is to be exempt because of the tendency of the association to advance the intellectual and moral condition of young men, it would be the beginning of a latitudinous construction that far exceeds the bounds the Constitution imposes."* (Italics supplied.)

The case of the *People ex rel. Gore v. Y. M. C. A.* (Ill.), 41 N. E. 557, involved taxation of a building in which there was a public library. The incorporated library association leased the library's quarters and used the income from same in liquidating an encumbrance placed on the building. It was held that the building was taxable. In *City of Auburn v. Y. M. C. A. of Auburn* (Maine), 29 Atl. 992, it was held that the real es-

tate of a charitable organization which is let for a *boarding house,* and another portion for stores, is taxable.

In *State (Trustees of Y. M. C. A., Prosecutor) v. City of Paterson* (N. J.), 39 Atl. 655, it was held that the buildings of the local Y. M. C. A. were not used exclusively for charitable purposes within the meaning of the statute which exempts buildings so used from taxation. The Supreme Court of New Jersey said: ". . . Charitable purposes are eleemosynary purposes, purposes connected with the distribution of charity,—i. e., of aid to the needy. It is impossible to hold that these buildings are in this sense used exclusively for charitable purposes. With slight exceptions, those who use them are not the recipients of charity, but such as purchase the right to use them at a price deemed adequate."

In *Y. M. C. A. v. City of Keene* (N. H.), 46 Atl. 186, it was held that a part of a Y. M. C. A. building which is rented for store purposes and a restaurant is not exempt from taxation. The court held further that *"the use made of the income does not entitle the plaintiffs to an exemption of the property from which the income is derived."* (Italics supplied.)

In *Y. W. C. A. of Phila. v. Monmouth Co. Board of Taxation* (N. J.), 105 Atl. 726, it was held that land owned by a Young Women's Christian Association, the buildings whereon had been destroyed by fire and not replaced, is not exempt from taxation. The court held: "Ownership is not the sole and only test. Use is the dominant factor upon which exemptions of this character are based, and to bring the use within the legislative contemplation it must be based upon a use of the entity, and cannot be applied to a severance of a freehold by which the building or the land may be severally and independently exempted." In *Y. M. C. A. of the Oranges v. City of Orange et al.* (N. J.), 128 Atl. 580, it was held that an unfinished building of the Y. M. C. A. was properly assessed under the statute, under which property

must be actually and exclusively used in work of the association to be exempt.

In *Young Men's Christian Assn. of Lincoln v. Lancaster Co. et al.,* 106 Neb. 105, 182 N. W. 593, the Supreme Court of Nebraska held that where certain floor space in a building owned and occupied by a charitable organization is leased to outside parties for the operation of a cafeteria, open to and patronized by the general public as well as the membership, the rentals being applied to the purposes of the organization, that portion of the building so leased is not exempt from taxation, although the maintenance of the cafeteria therein is not only financially helpful to the organization, but promotes its charitable purposes by attracting people to the building.

In *State ex rel. Cunningham v. Board of Assessors,* 52 La. Ann. 223, 26 So. 872, the Supreme Court of Louisiana held that a Young Men's Christian Association could not claim exemption of its building from taxation on the ground that, because its work tended to improve and elevate young men, the building was actually used for charitable purposes. In *Fort Des Moines Lodge No. 25, I. O. O. F., v. County of Polk et al.,* 8 N. W. 687, the Supreme Court of Iowa held that a building belonging to a benevolent society, which is leased for a pecuniary profit, is not exempt from taxation, although it may have been built from a fund which is exempt and the rents go into such fund. In that case the society bought some lots and erected thereon a business block and leased the building for business purposes.

In *People ex rel. Mizpah Lodge, I. O. O. F., v. Burke et al., City Assessors,* 126 N. E. 703, Judge POUND of the Court of Appeals of New York held that realty of a Lodge of Odd Fellows with a building containing lodge rooms, kitchen and other rooms which the lodge uses itself part of the time, and also leases regularly to other fraternal organizations for their meetings, is not exempt from general tax, on the ground it is used exclu-

sively to carry out the religious, charitable and educational purposes of the lodge's organization. That case quotes the following: " 'It is the exclusive use of the real estate for carrying out thereupon one or more of the purposes of the incorporation of the relator which confers the right of exemption, and not the benefits accruing to it and its useful work from the income derived from others in consideration of their use of the real estate for their purposes': *People ex rel. Young Men's Assn. v. Sayles,* 32 App. Div. 197, 202, 53 N. Y. Supp. 67, 70, affirmed on opinion below 157 N. Y. 677, 51 N. E. 1093."

In *Benjamin Rose Institute v. Myers,* 92 Ohio St. 252, 110 N. E. 924, the Supreme Court of Ohio held that the real estate belonging to an institution of purely public charity is exempt from taxation only when used exclusively for charitable purposes, and, if such real estate is rented for commercial and residence purposes, it is not exempt, although the income arising from such use is devoted wholly to the purpose of the charity.

In *United Brethren Publishing Establishment v. Shaffer,* 123 N. E. 697, the Appellate Court of Indiana, Division No. 2, held that although a church publishing establishment applied all the net proceeds of its business of publishing church and Sunday-school papers to the charitable purpose of aiding traveling and worn-out preachers, the establishment was not a charitable institution within the meaning of the statute exempting charitable organizations from taxation.

Therefore, both on reason and authority, the question before us must be answered in the negative. Plaintiff's dormitory in which rooms are rented commercially to lodgers, is not so clearly "necessary for the occupancy and enjoyment" of that part of plaintiff's building in which its work of charity or benevolence is carried on as to entitle it to exemption from paying taxes on the dormitory.

The decree is affirmed without costs,