Homewood-Brushton Citizens Renewal Council, a nonprofit corporation *v.* Department of City Treasurer, City of Pittsburgh. City of Pittsburgh, Appellant.

Argued October 26, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Grace S. Harris*, Executive Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.*, City Solicitor, for appellant.

*Michael A. Donadee*, for appellee.

OPINION BY JUDGE MENCER, December 21, 1976:

The City of Pittsburgh (City) has appealed from an order of the Court of Common Pleas of Allegheny County which granted a tax exemption to the Homewood-Brushton Citizens Renewal Council (Council). The Council successfully sought to have the gross receipts of a roller skating rink exempted from the Pittsburgh Institution and Service Privilege Tax (Tax). This tax is in the nature of an excise tax imposed on nonprofit institutions pursuant to The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6901 et seq.

632

The Council contended below that it was entitled
to the charitable exemption granted in Section 204(a)
(3) of The General County Assessment Law (Act),
Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S.
§5020-204(a)(3), which provides:

(a)  The following property shall be exempt
from all county, city, borough, town, township,
road, poor and school tax, to wit:

. . . .

(3)  All hospitals, universities, colleges, semi-
naries, academies, associations and institutions of
learning, benevolence, or charity, including fire and
rescue stations, with the grounds thereto annexed
and necessary for the occupancy and enjoyment
of the same, founded, endowed, and maintained by
public or private charity: Provided, That the en-
tire revenue derived by the same be applied to the
support and to increase the efficiency and facili-
ties thereof, the repair and the necessary increase
of grounds and buildings thereof, and for no other
purpose. . . .

The City contends that the Council is not entitled
to the exemption on the gross receipts of the skating
rink because it is not being operated as a "purely pub-
lic charity." We agree and therefore reverse.

Often, when a group with laudable aims has,
through the exercise of diligence and ingenuity, bene-
fited the community at no pecuniary gain to itself,
our impulse is to consider it, broadly speaking, as
charitable in nature. The law governing charitable
exemptions, however, places the burden on the tax-
payer to bring itself within the ambit of the charita-
ble exemption. *Four Freedoms House of Philadel-
phia, Inc. v. Philadelphia*, 443 Pa. 215, 279 A.2d 155
(1971). Such exemptions are strictly construed
against the taxpayer. *Board of Revision of Taxes of
Philadelphia v. United Fund of the Philadelphia Area,*

11 Pa. Commonwealth Ct. 201, 314 A.2d 530 (1973). The law thereby restrains our liberality by reminding us that when the tax burden is lifted from the shoulders of one, it must be redistributed among those who remain nonexempt.

In the case at bar, the Council is a group with the praiseworthy goal of revitalizing an area of the City which has become rundown over the years. In order to provide recreation and perhaps attract new businesses to the area, the Council, as one of its projects, rented an old carbarn from the Urban Redevelopment Authority of Pittsburgh for a token sum. It then constructed a roller skating rink known as the Greater Pittsburgh Coliseum in one-half of the structure. Financing was obtained in large measure from federal funds, in addition to a bank loan. The Council operates the Coliseum, charging the general public rates roughly comparable to commercial enterprises. On occasion, civic and religious groups have used the rink, sometimes without charge. Although the *Council* as an entity is seeking this charitable exemption, we must consider only the narrower question of whether the gross receipts of the Coliseum are exempt from the Tax.

In order to qualify for the charitable exemption, certain necessary standards must be met. As Section 204 of the Act clearly states, an institution, to be exempt, must be "founded, endowed, and maintained by public or private charity." In addition, the entire revenue derived must be applied to the support and to increase the facilities of the charity and for no other purpose. Assuming that an institution meets these statutory tests, it must be further examined to see whether the grant of an exemption would carry out the constitutional purpose found in Article VIII, Section 2(a)(v) of the Pennsylvania Constitution:

(a)   The General Assembly may -by law exempt from taxation:

. . . .

(v)   Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the. purposes of the institution.

The requirement that an institution be a "purely public charity" is a recognition of the theory underlying all charitable exemptions. The charity becomes exempt because it is providing services to a group of recipients which would ordinarily be provided by the government at little or no cost. In short, the institution must have "eleemosynary characteristics." In *Young Men's Christian Ass'n of Germantown v. Philadelphia,* 323 Pa. 401, 409, 187 A. 204, 208 (1936), our Supreme Court defined "eleemosynary characteristics" to mean simply that "[w]hat is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered." In addition, the persons benefited must be the proper objects of charity. *Id.*

In the case at bar, neither of these criteria has been met. The Coliseum's prices are admittedly comparable to those of similar commercial enterprises in the general area. More importantly, members of the general public, regardless of their financial status, may use the facilities. Therefore, affluent children have the same right of access to the Coliseum at the same price as the most destitute youngster in the area.

In arriving at our conclusion that these factors render the Coliseum nonexempt, we rely heavily on the thorough analysis of former Chief Justice MAXEY in *Young Men's Christian Ass'n of Germantown v. Philadelphia, supra,* which forty years later has neither lost its cogency nor been rendered obsolete by subsequent

amendments to the statute. Mr. Chief Justice MAXEY proposed the following illustrative hypothetical situations:

> [I]f some liberally-disposed person would erect and maintain a dormitory to provide free lodging for well-to-do people, his lodging house could not properly be called a charitable institution. If a person built a lodging house to provide lodging for any personally unobjectionable individuals who might apply, whether they were self-supporting or impoverished, at a cost to those individuals which would yield no profit to the proprietor, such a lodging house would not be a charitable institution. . . . If a person conducted a lodging house at a profit, but devoted all the profits to the amelioration of the condition of the admittedly poor, his lodging house would not be a charitable institution. The fact that all the net proceeds of a business are used for charitable purposes does not make that business a charitable institution. *If any business is manifestly commercial in character, it is not relieved of that classification simply because its earnings are devoted to charity. A tax exemption based on such reasons would be administratively impracticable and lead both to injustice and fiscal confusion.*

323 Pa. at 412, 187 A. at 209 (emphasis added).

Thus it is not enough that an institution be founded, endowed and maintained by charity, that all its proceeds be used for charitable purposes, or that it is not operated at a profit. When an institution, otherwise charitable, seeks to compete with private enterprise for the custom of the general public at commercial rates it cannot qualify for a charitable exemption on the portion of its holdings so operated. *Hill School Tax Exemption Case,* 370 Pa. 21, 87 A.2d 259 (1952); *Young Men's Christian Ass'n of Germantown v. Philadelphia, supra.*

636

In contrast to the instant case, stand *Four Freedoms House of Philadelphia, Inc. v. Philadelphia, supra,* and *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), in which the recipients were shown to be proper objects of charity comprising a definite class. In addition, there was substantial proof that the rates charged were not comparable to those of commercial institutions. Here the Council has not satisfied its burden on the claim of tax exemption. They have not established that those served by the Coliseum are, in the main, proper objects of charity. Nor did the proof offered by the Council establish that the Coliseum is primarily other than a commercial enterprise.

Order reversed.

ORDER

Now, this 21st day of December, 1976, the order of the Court of Common Pleas of Allegheny County granting a tax exemption to the Homewood-Brushton Citizens Renewal Council in the above captioned case is reversed.