## City of Pittsburgh v. Montefiore Hospital Association

*Grace Harris*, for plaintiffs.
*Robert Engel*, for defendant.

WENTLEY, J., June 28, 1974.—Plaintiff, City of Pittsburgh, instituted this action seeking to collect from defendant hospital a tax based upon gross receipts received by the hospital in the operation of its parking facilities. Specifically, this suit was instituted pursuant to City of Pittsburgh Ordinances 674 of 1968 and 704 of 1969. Ordinance 674 imposes a tax in the amount of 15 percent on the consideration received for the parking of a vehicle in a nonresidential parking place. Ordinance No. 704 of 1969 re-enacted the prior ordinance but increased the rate to 20 percent. The period of time involved in this action is from February 1, 1969, through October 31, 1971. The hospital, contending that its parking facilities are actually and regularly employed in the performance of its function as a public charity, denies any liability.

The evidence adduced during the prolix hearings established that from the time of the initial design of the parking facilities in question in 1962 to their actual construction and operation, the hospital has sought to meet certain specific needs and problems which this general and teaching hospital faces. The parking facilities in question were designed to be an integral part of the hospital itself and are physically incorporated into the hospital buildings. A tri-level parking

facility encompasses two floors within the hospital building and includes a top level which is uncovered.

In evaluating the use of this facility, it is essential that the surrounding area be considered. Defendant hospital is located in the Oakland section of the City of Pittsburgh. It was established in the testimony that Oakland suffers from inadequate parking to service its many educational and medical institutions. Oakland is a somewhat unique area in the City of Pittsburgh because of the large number of people who must travel to and from this area in order to receive medical attention, attend our universities or participate in the scientific research, cultural and athletic events which are centered there. Parking has been and will continue to be a most serious problem to those who seek to deliver or receive essential services.

It was also established at the hearings that the hospital parking facilities, being located away from main thoroughfares in Oakland, are clearly for the use of the hospital and those having business therein and not for the general public. In function and operation it was shown that at the lower level emergency patients are now admitted through the parking facility. Similarly, the intensive care units, out-patient clinics, and other services are best reached throughout the levels of the parking garage.

Although the hospital does not attack the validity of the respective ordinances, it does assert that by virtue of section 204 of the General County Assessment Law of May 22, 1933, P. L. 853, as amended, 72 PS §5020-204, it is exempt from their application. This section provides:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

"  . . .

"(c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

Both plaintiff and defendant agree that although the foregoing language is addressed to real estate, it has been judicially determined that the same standard applies to excise taxes such as the one here involved: Pittsburgh Appeal, 439 Pa. 295 (1970). See also Allegheny County v. Moon Township, 436 Pa. 54 (1969). The city has attacked the validity of this section, contending that it exceeds the authority to grant exemptions which was narrowed by the 1968 amendment to article VIII, sec. 2 of the Pennsylvania Constitution which exempts:

"Instituitions of purely public charity, but in the case of any real property tax only that portion of real property of such institution which is actually and regularly used for the purposes of the institution."

In view of the finding of this Court that the parking facility in question is "actually and regularly used for the purpose of the institution" and it has been stipulated that all revenues have been properly applied, we need not consider whether or not the legislature has exceeded the constitutional mandate quoted above.[1]

---

[1] It is interesting to note that the Journal of the Constitutional Convention reveals that the delegates did not feel that they were narrowing the exemption. *Journal of the Constitutional Convention,* Vol. I, p. 428, 618, 619 and Vol. II, p. 651.

The court is convinced that no use of the parking facility has ever been made which is inconsistent with or contrary to hospital purposes. The city did show that on a particular Sunday some families may have parked at the hospital and walked up the hill to the football game. Such an isolated incident cannot alter or destroy the true purpose and function of the parking garage. The city also apparently feels that some physicians may utilize this parking facility even though they are traveling to their nearby medical offices. Even if such should be the case (and it was not clearly established), this does not seriously detract from the hospital's claim that it is obligated to provide parking for its staff members. For example, should a surgeon be summoned to an emergency situation, it is clear to this court that he must be able to quickly dispose of his motor vehicle upon arrival in order that precious operating time will not be sacrificed. It is similarly clear to this court that patients requiring emergency treatment must be delivered to the hospital promptly and efficiently. Out-patients arriving at the clinic are often incapacitated, and it seems most appropriate that they be able to drive or have their cars driven inside the hospital to their various receiving stations. The existence of cover overhead and the elimination of any unnecessary walking would seem most important in the proper delivery of health care services. Because of the parking problem which exists in Oakland, to provide such facilities for employes also appears to be quite appropriate.

The city would have this court find that because the hospital would not cease to exist without parking facilities such facilities bear no reasonable relationship to the purposes of the hospital. Our courts have never imposed such a criterion. For example, the home of the chancellor of the University of Pittsburgh was found

to be exempt from taxation because it was used for numerous and extensive contacts with the public: University of Pittsburgh Tax Exemption Case 407 Pa. 416 (1962). Surely, such contacts could have occurred within the university and the university could easily have functioned without establishing a specific residence for the chancellor. Nevertheless, the court found the activities to be university related and the property, therefore, exempt. Similarly, a two and one-half story residence contiguous to a hospital was found to be exempt from real estate tax: Shadyside Hospital Appeal, 207 Pa. Superior Ct. 261 (1966). As was noted in County of Lancaster v. Y.W.C.A. of Lancaster, 92 Pa. Superior Ct. 514 (1928), at page 518:

"The word 'necessary' as used in the statute does not mean 'absolute necessity,' but rather a 'reasonable necessity,' 'convenient and useful' to the purpose of the charity."

In a very similar situation concerning the parking facilities of the Greater Pittsburgh Airport, our Supreme Court stated in Moon Township Appeal, 387 Pa. 144 (1956), at page 148:

"There is likewise no question but that the property the use of which is *reasonably necessary* for the efficient operation of the Airport, even though not indispensable or essential thereto, is entitled to exemption." (Emphasis in original.)

A more difficult question arises with respect to providing parking facilities for those who visit patients of the hospital or those having other functions to perform such as clergymen, volunteers, and the like. There was testimony at the trial by several eminent physicians and surgeons that the visits and presence of the patient's family can be of considerable therapeutic value. The disorientation which can

occur because of hospitalization coupled with the normal fear of hospitals which we all possess to some degree can be clearly alleviated by the support and concern of loved ones. The city may be correct in its position that this does not elevate the parking facilites to the dignity of the amphitheater or hospital bed, but again our courts have historically been most reluctant to be the determiners of how a hospital should be operated. To provide parking facilities in a congested area where parking is a serious problem and to make such facilities secure by the presence of attendants in order that the patient may ultimately benefit seems to this court to be an "actual" and "regular" use of property for hospital purposes. The fact that public transportation is available does not seem to be an overwhelming determinant. In an age of dependence upon automobiles, it appears that the hospital is merely responding to reality. Similarly, visits by clergy and the performance of social services to be rendered by volunteers are directly related to the function of a hospital. Providing them with parking, while perhaps not essential, is so clearly related to the performance of their various functions as to compel this court to find again that the parking facilities are being regularly and actually used to carry out the purposes of the Hospital.

It is next argued that because a charge is imposed for the use of the parking facilities it must therefore be found to be a commercial venture. All sums received are applied to the Hospital's operating funds and used for no other purpose. The mere charging of parking fees or the realization of revenue from an endeavor does not necessarily taint the charitable use of the property involved: Vanguard School Tax Exemption Case, 430 Pa. 378 (1968); Ellis Hospital v.

Fredette, 27 A. D. 2d 390 (1967), 279 N.Y. Supp. 2d 925 (1967); and Bowers v. Akron City Hospital, 16 Ohio St., 2d 947, 243 N.E. 2d 95 (1968).

The city also argues that an individual could park his car in the hospital lot even though he had business elsewhere. The court is satisfied from the testimony that both by the placing of signs and by the patrolling of the parking areas by attendants, every reasonable effort has been made and is being made to make certain that parking spaces are held for the use of those dealing with the hospital. No doubt, by ruse, an individual might park there and go elsewhere; this in no way militates against the clear purpose and function of these facilities.

Our courts have repeatedly addressed themselves to this particular question. In Allegheny General Hospital v. Board of Property Assessment, Appeals and Review, 207 Pa. Superior Ct. 266 (1966), our Superior Court stated:

"It can hardly be denied at this point in time that 'adequate free parking facilites are certainly as important to a public charity as they are to a business'; Academy of Natural Sciences v. [City of] Philadelphia 6, D & C 2d 145 (1955). This is particularly true in a heavily congested traffic area such as that surrounding Allegheny General Hospital. In short, these lots were used necessarily and directly for the purposes of the hospital."

See also St. Joseph's Hospital v. Board of Revision of Taxes, 57 D. & C. 2d 185 (1971), and Academy of Natural Sciences v. City of Philadelphia, 6 D. & C. 2d 145 (1955). An annotation in 33 A. L. R. 3d at page 941 seems to accurately summarize the prevailing judicial view of the issue raised by the city:

"The courts seem to be particularly inclined to allow the exemption where a peculiar need for parking facilities is shown, as where the institution in

question is a university located in a congested urban area where other parking facilities are inadequate, or where the institution is a hospital and visitors to the patients have experienced difficulty in procuring parking spaces. *In other words, the courts recognized that to properly operate a modern university or hospital, adequate facilities to store automobiles belonging to the staff, students and visitors is imperative.*" (Emphasis supplied.)

In summary, the court is satisfied that defendant has successfully carried the burden of proving that its integral, specially designed and constructed parking facility actually and regularly services the purposes of a large inter-city hospital located in a congested area. The court, therefore, finds it exempt from all excise taxes imposed by Ordinances No. 674 of 1968 and No. 704 of 1969 of the City of Pittsburgh.

## NONJURY VERDICT

And now, June 28, 1974, the court finds defendant the Montefiore Hospital Association of Western Pennsylvania, to be exempt from the imposition of the taxes imposed by Ordinance No. 674 of 1968 and Ordinance No. 704 of 1969 of the City of Pittsburgh. See opinion filed this date at the above number and term.