In the Matter of the Appeal of Lanchester Medical Center Association From Assessment of Real Estate Situate in Sadsbury Township for 1975. Lanchester Medical Center Association, Appellant.

Argued January 5, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John W. Burge*, with him *M. Elvin Byler, James H. Thomas and Wengler & Byler*, for appellant.

*David E. Greer*, with him *Carl G. Herr*, and *Herr, Kirchner & Herr*, for appellee.

OPINION BY JUDGE MENCER, March 8, 1976:

At the beginning of this decade, the foresighted and resourceful residents of rural eastern Lancaster County and rustic western Chester County underwent the frightening experience of watching two of their seven local doctors flee to the city in the pursuit of more settled, if not more lucrative, careers. Having in the past been unable to attract additional physicians to service the needs of their neighbors, the few remaining physicians, together with certain community leaders, embarked upon a search for a solution to their physician shortage problem.

The citizens of the various communities voiced their feelings of concern and, early one summer evening, some seventy anxious neighbors converged upon the Gap Fire Hall to discuss their collective problem. Unfortunately, even after the expenditure of a considerable amount of effort, the combined citizenry was unable to attract a single additional doctor to its rural paradise.

Refusing to be defeated, the leaders again called for a meeting of the citizens of the area. This time literally hundreds of concerned residents converged on the Christiana Fire Hall. After lengthy democratic debate and discussion, these citizens initiated the formation of what would soon become the Lanchester Medical Center Association (Association). By its Articles of Incorporation[1] the new Association set forth the following laudable reasons for its existence:

"3. . . . [T]he purpose or purposes of the corporation are:

"To promote improved medical services for the Gap, Christiana, Atglen, Parkesburg and Cochranville areas of eastern Lancaster County and western Chester County.

"To encourage family service and general practice physicians to practice in those areas in order to meet their medical needs.

"To assist in the establishment of adequate facilities in those areas for the practice of family service and general practice medicine.

"To establish within those areas harmonious relations and effective communication between their residents and resident physicians.

"To solicit and raise funds as required to accomplish the above services.

---

1. The Association was incorporated under the Nonprofit Corporation Law of 1933, Act of May 5, 1933, P.L. 289, *as amended,* 15 P.S. §7001 et seq. (repealed and replaced in part by the Nonprofit Corporation Law of 1972, 15 Pa. C.S. §7301 et seq.)

"4. . . . [T]his is a corporation which does not contemplate pecuniary gain or profit, incidental or otherwise, to its members."

After receiving a federal charity tax exemption, the Association began its long struggle to fulfill its objectives. The noteworthy generosity of the respective communities, including the responses of various civic organizations, churches, and individuals, enabled the resourceful Association members to amass a considerable sum of money to be used for the construction of a major medical clinic in the Atglen area. Eventually, these thrifty persons of Pennsylvania Dutch ancestry completed the construction and equipping of a $300,000 complex that currently can handle nearly every medical need of the area. The clinic has been nationally recognized as a true prototype for the practice of modern progressive medicine in a rural setting. Indeed, it is a significant tribute to the resourcefulness of those who first envisioned the problems confronting the area resulting from the departure of the two local doctors.

Despite the obvious attractiveness of the facility, staffing remained a very frustrating problem. Unable to find three or four experienced physicians to operate their "clinic," the Association finally approached two dedicated and competent young interns at a Lancaster hospital and presented to them an attractive proposal. These two doctors (later joined by a third physician) have since been reinforced by medical specialists who also lease space from the Association but who only visit the facility on a biweekly or monthly schedule. Also present on the premises is a full-time laboratory technician who operates a six-day full-service laboratory. The Association has achieved its highest goals and deserves the commendation of not only those who utilize the clinic but also those who believe in good old Yankee ingenuity and determination.

Nevertheless, on July 25, 1974, the Association received notice from the Board of Assessment Appeals of Lancaster County (appellee) that its realty and improvements would henceforth be subject to taxation. Timely appeal was taken to the Court of Common Pleas of Lancaster County where, after a hearing, President Judge JOHNSTONE affirmed the Board's decision and dismissed the appeal. It is from this order that the Association has appealed to this Court.

The sole issue for our review is whether the land and facilities in question are exempt from property taxation pursuant to Section 204 (a) (3) of The General County Assessment Law, Act of May 22, 1933, P. L. 853, *as amended*, 72 P.S. §5020-204 (a) (3), which reads:

"(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

"(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose . . . ."

This provision was enacted and amended in response to Article 8, Section 2 (former Article 9, Section 1), subdivision (a) (v), of the Pennsylvania Constitution, which grants to the General Assembly the ability to exempt from taxation all "[i]nstitutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution."

Appellee has conceded here that the Association is a "purely public charity" as required by Article 8, Section 2 of the Constitution and that therefore the property involved would normally be exempt from taxation pursuant to Section 204 (a) (3) of The General County Assessment Law. Appellee nevertheless contends that the Association must be denied its exemption because the property is not "actually and regularly used" for an exempt purpose as otherwise required by Article 8, Section 2 of the Constitution. We agree.

The facts unequivocally reveal that the Association, though charitable in its purposes, acts merely as a landlord for the many tenant doctors (and the laboratory technician) who use the property to pursue their own independent profitable practices. Though it may be true that the three full-time physicians, in addition to their normal practices, actively participate in medical and nonmedical charitable activities in conjunction with the Association, it is also apparent that even these three physicians are not employees of the Association. Though their leases do require them to provide 24-hour service and to accept all patients regardless of their ability to pay, they remain legally (if not morally) independent of the Association. *Their use* is the pursuit of private enterprise and they, not the Association, *occupy and use the facilities* in that pursuit. The property therefore falls within the proscriptions of subsection (b) of Section 204 of the Act, 72 P.S. §5020-204 (b), which provides:

"(b) Except as otherwise provided in clause (11) of this section, all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom."

Additionally, we note that the facts presently before us are distinguishable from those found in *Four Freedoms House v. Philadelphia*, 443 Pa. 215, 279 A. 2d 155 (1971), and *Presbyterian Homes Tax Exemption Case*, 428 Pa. 145, 236 A. 2d 776 (1968), wherein the Supreme Court found that the objects and recipients of the eleemosynary bounty of the charities (*i.e.*, elderly persons with limited incomes) were the parties who provided, through their partial rental reimbursements, the income attributable to those charities. Here no one seriously contends that the physician tenants are the objects of the Association's bounty. The case at bar is also easily distinguishable from *Board of Revision of Taxes of Philadelphia v. United Fund of the Philadelphia Area*, 11 Pa. Commonwealth Ct. 201, 314 A. 2d 530 (1973). In *United Fund*, the landholder charity, for a nominal fee, leased part of its building to other charities that were partially but directly funded by the lessor charity itself. This certainly is not the case at hand.

The Association has failed to carry its burden of proving entitlement to an exemption. We find *Community College of Delaware County v. Board of Assessment*, 5 Pa. Commonwealth Ct. 487, 290 A. 2d 432 (1972), to be controlling here.[2]

Order affirmed.

---

2. Though *Community College of Delaware County* was decided prior to the 1972 amendment to Section 204 of the Act (Act of September 22, 1972, P.L. 868) and dealt with subsection (g) (now subsection (a) (7), 72 P.S. §5020-204 (a) (7) ), "public property" exemption issue, rather than the present subsection (a) (3) (former subsection (c) ), "charity" exemption issue, the analysis set forth in that opinion is nevertheless controlling here. The determinative provisions found formerly in subsection (*1*) of the Act are the same as those now found in subsections (b) and ( c) of the amended Act, 72 P.S. §5020-204 (b), (c), and are equally as applicable to a charitable property exemption.