In Re: Appeal of Marple Newtown School District From Decision of Board of Assessment Appeals of Delaware County et al. The Devereux Foundation, Appellant.

Argued September 29, 1978, before Judges WILKINSON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Brian E. Bennett,* with him *Greenwall, Porter, Smaltz & Royal,* for appellant.

*Vram Nedurian, Jr.,* with him *Bruce A. Irvine,* for appellees.

Ross A. Unruh, and MacElree, Harvey, Gallagher & Kean, Ltd., for amicus Curiae, West Chester Area School District.

OPINION BY JUDGE DISALLE, December 19, 1978:

We must decide whether Devereux Foundation (Devereux), a Pennsylvania non-profit corporation, has been founded, endowed, and maintained to a sufficient degree by public or private charity to entitle it to a property tax exemption.

The property in question was assessed at $81,300 and Devereux had paid the taxes up to and including 1975. In 1976, however, Devereux chose to appeal the property assessment. On its appeal to the Delaware County Board of Assessment Appeals (Board), Devereux was granted an exemption. The Marple Newtown School District, with Newtown Township intervening, appealed the decision to the Court of Common Pleas of Delaware County. In its order dated December 13, 1977, the lower court sustained the appeal and reversed the Board's action. We affirm.

Devereux's claim to exemption from taxation stems from the grant in Article VIII, Section 2 of the Constitution of the Commonwealth of Pennsylvania that:

(a) The General Assembly may by law exempt from taxation:

. . . .

(v) *Institutions of purely public charity,* but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution. (Emphasis added.)

By the enactment of Section 204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as*

*amended,* 72 P.S. §5020-204, the General Assembly established certain classifications of property which may be exempted and provided, *inter alia:*

>    (a)   The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
>    . . . .
>
>    (3)   All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, *founded, endowed, and maintained by public or private charity:* Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose; (Emphasis added.)

The underlying philosophy of the constitutionally-authorized and legislatively-enacted tax exemption was explained by our Supreme Court as follows:

>    Taxes are not penalties, but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. There are substantial reasons why an institution wholly devoted to public charity

should be exempt from taxation, . . . *Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide. . . .* The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities. It is therefore just that an institution which assumes pro tanto the taxpayer's burden should be relieved of its own tax burden. (Emphasis added.)

*Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 413-14, 187 A. 204, 210 (1936). In deciding whether Devereux is entitled to the exemption, we must also recognize that body of case law holding that statutory provisions exempting property such as charitable institutions from taxation are subject to a strict construction rather than a liberal one. *Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971); *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A.2d 44 (1948); and *see* 1 Pa. C.S. §1928(b)(5).

Since liability of all real estate to taxation is the rule, with exemption therefrom being the exception, it is the taxpayer who bears the burden of bringing itself within the ambit of the exception. *Robert Morris College v. Board of Property Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. 648, 291 A.2d 567 (1972). It is clear, therefore, that in order to claim an exemption from taxation, the taxpayer must affirmatively show that the entire institution is one of "purely public charity," was founded by public or private charity, and is maintained by public or private

charity. *Woods Schools Tax Exemption Case,* 406 Pa. 579, 178 A.2d 600 (1962). In this regard, the law is well settled that the resolution of whether such an institution is a "purely public charity" is a mixed question of law and fact. *Hill School Tax Exemption Case,* 370 Pa. 21, 87 A.2d 259 (1952). Insofar as this determination involves both questions of law and questions of fact, the courts of this Commonwealth have had particular difficulty in arriving at any concise definition of the terms. Consequently, each case must be decided on its own unique factual composition.

Devereux operates residential and day treatment facilities for approximately 1,950 emotionally disturbed and mentally retarded children and young adults nationally. Although founded in 1912, Devereux became a Pennsylvania non-profit corporation in 1938 by the donation by its stockholders of assets having a net value of $65,000. In 1967, its assets were irrevocably dedicated to charity. The Pennsylvania Department of Welfare has licensed Devereux as a residential treatment facility and it is licensed as a school by the Commonwealth of Pennsylvania.

In Pennsylvania, there are twenty-eight treatment facilities. The facility which is the subject of this appeal consists of thirty-three acres of land and improvements in Newtown Township, known as the Gateway. The average number of children in residence at Gateway is fifty-five. These children, aged five to fourteen years of age, have psychiatric disorders and need combined psycho-therapy and therapeutic education. Entrance into the Gateway program is attained upon application and the payment of tuition. The range of tuition charges is from $1,250 to $1,950 per month, with the basic charge being $1,350, or an average total of $16,000 per year. Contracts are signed with the resident's parent or guardian for a twelve month period. The tuition charge is determined by adding

historical costs, which include the Gateway operation costs and a percentage of the costs of operation of the central administration of Devereux's headquarters in Devon, Pennsylvania, with an estimated inflation factor for increased costs, and dividing this amount by the projected enrollment of annual residents who will sign contracts for the next succeeding year. The ability of Gateway residents and their families to pay the charges is not a factor reviewed by Devereux. In addition to the basic tuition charge, residents must pay for private consultation as needed, any required hospitalization, and for all personal needs. Furthermore, for those residents to whom vacations are permitted, no adjustment in charge is made.

With regard to Devereux's operating finances, the lower court made the following pertinent and accurate findings:

7. The financial data submitted by Devereux indicates the following:

a. 6% of the entire Devereux population consists of life-time residents. The expense of maintaining the life-time residents is deducted in Devereux's financial statements but the income contributed by the life-time residents is not included on the debit side.

b. Portfolio income on investments is excluded from the financial statements.

c. Unrealized losses are deducted but unrealized gains are not included.

8. The total retained earnings as submitted by Devereux as of August 31, 1976 was $4,214,-675.00. This figure does not include non-refundable life-care contributions, and it does include the deduction of accumulated depreciation. If the non-refundable life-care in the

amount of $9,422,345.00 and accumulated depreciation of $11,645,954.00 are added to the reported total retained earnings of $4,214,675.00, the 'bottom line' for Devereux would be $25,282,974.00.

9. The comparison of the ratio of scholarships to operating income at the Gateway School is as follows:

1974 — 1/10 of 1%
1975 — 1/10 of 1%
1976 — 2/5 of 1%

10. For the years 1973 through 1977 inclusive, scholarship funds received by Devereux totalled $410,040.00. During the same period of time, scholarships granted by Devereux amounted to $380,175.00.

With the foregoing financial considerations as a backdrop, we will now address the issue of whether Devereux is a "purely public charity" so as to entitle it to a property tax exemption for 1976.

Devereux places much reliance on *Vanguard School Tax Exemption Case*, 430 Pa. 378, 243 A.2d 323 (1968), claiming that the facts of that case are virtually indistinguishable from the case at bar. Admittedly, there are apparent similarities, but the differences between the two cases, on matters of consequence, are substantial enough to lead us to conclude that *Vanguard* is not dispositive here. The Vanguard School, a non-profit school for handicapped children, was allowed a property tax exemption since, according to our Supreme Court, it was maintained as a purely public charity. Although founded and maintained by charitable contributions, additional funds were required to operate the institution. To meet these operating costs students were charged $3,000 per year as tuition and the state supplied a subsidy of $1,500

per student per year. From these operating revenues, only 2.2 per cent of the total was allocated to scholarship aid. A surplus of $80,000 was realized during the test period; this surplusage was then applied directly to educating other children attending the school.

While it is true that both the Vanguard School and the Gateway facility provide a curriculum designed to train and equip children who are psychologically and emotionally unstable, the following significant differences in the manner of their operations emerge. In the first place, Devereux does not receive any contributions for the maintenance of its institution. All operating costs are derived from revenues received from tuition. Next, Devereux, unlike the Vanguard School, does not apply any of its surplus to assist in educating the other children. Even the small number of scholarships that are provided derive from monies contributed specifically for that purpose. Finally, there is no affirmative recognition by the state, through subsidies or any other device, that the residents at Devereux are in need of specialized education not provided for in the public school system. In setting forth these factors which lead us to conclude that *Vanguard* does not control, we do not intend to minimize in any way the beneficial and praiseworthy services provided by Devereux. Rather, we are convinced that a further analysis must be made of Devereux's operating procedures.

It is clear from the above discussion that a charitable institution may receive some payment for its services, and that by the imposition of a charge for tuition it does not thereby release and relinquish its privilege to tax exemption. *Hill School Tax Exemption Case, supra.* There are, however, three specific factors to consider in any determination of whether an institution is a "purely public charity": (1) that there is some significant charitable support for the

school; (2) that the school has rendered significant charitable services to the public by way of scholarship aid to students; and (3) that the school's income was expended for its educational purpose without the accumulation of unappropriated surpluses. *Point Park Junior College v. Board of Property Assessment, Appeals and Review of Allegheny County*, 23 Pa. Commonwealth Ct. 367, 351 A.2d 707 (1976); *Robert Morris College v. Board of Property Assessment, Appeals and Review, supra.* Devereux has satisfied the first requirement, since it is unassailable that the foundation receives significant charitable contributions. Devereux's scholarship aid program, on the other hand, gives us concern.

As stated previously, direct scholarships are granted with the amount limited to funds donated for that purpose.[1] The record shows clearly, however, that only a few scholarships are awarded. Devereux grants approximately three partial scholarships per year at Gateway, averaging a total of $1,000 each. This constitutes about two-fifths of one percent of its tuition revenues, and suggests to us that the scholarship aid program is inadequate. Our opinion is confirmed when we also consider that financial ability of the residents' families is not a factor reviewed by

---

[1] Scholarship donations received by Devereux on a nationwide basis for the years 1973-1977 follow:

|  | Scholarship Gifts Received | Scholarships Granted |
|---|---|---|
| 1973 | $77,520 | $69,884 |
| 1974 | 61,573 | 81,234 |
| 1975 | 116,162 | 75,279 |
| 1976 | 49,737 | 93,600 |
| 1977 | 105,039 | 60,178 |
| Totals | $410,040 | $380,175 |

Devereux explains that it is its practice to grant scholarships in the fiscal year following receipt.

Devereux. Indeed, the minimal scholarships that are given are restricted to students already at Devereux. Given the relatively small amount of aid furnished as compared to the total yearly tuition costs, we cannot avoid the impression that Devereux is merely protecting its investment in a child whose parent or guardian has encountered temporary financial difficulty. The children at Gateway are not for the most part recipients of charity; they purchase a right to use the services of the facility at a price deemed adequate. *See Ogontz School Tax Exemption Case,* 361 Pa. 284, 65 A.2d 150 (1949).

Finally, our review of the record reveals that Devereux has had a substantial retained surplus income or profit every year since its inception. Yet the testimony presented failed to indicate to what purpose these funds were utilized. While we certainly do not intend to penalize a charitable institution for good fiscal management, we nevertheless believe that it must be established that at least some of these monies be utilized to advance the charitable endeavors of the institution. The mere possibility that the surplus will be used for furthering its charitable purposes is not sufficient. *See Robert Morris College v. Board of Property Assessment, Appeals and Review, supra.*

While we are impressed that Devereux in its general work serves a noble purpose, the usefulness of an enterprise is not sufficient basis for relief from the burden of sharing the essential costs of local government. Certainly, Devereux is a charitable institution, but we are unable to conclude that it has sustained its burden of proving that it is a *"purely* public charity." Since it lacks certain necessary eleemosynary characteristics, Devereux is not entitled to a property tax exemption at this time.

Accordingly, we affirm.

ORDER

AND Now, this 19th day of December, 1978, the order of the Court of Common Pleas of Delaware County, dated December 13, 1977, is affirmed.

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent. The material facts set forth in the case now before us are, to me, indistinguishable from those set forth in *Vanguard School Tax Exemption Case,* 430 Pa. 378, 243 A.2d 323 (1968).

The majority opinion seems to be based, at least in part, upon the sound financial condition of the institution and particularly the amount of its retained earnings. The fact that the institution has substantial reserves or grants few scholarships does not make it any less a charity. As was stated by Justice MUSMANNO in *Vanguard School Tax Exemption Case, supra,* at 383, 243 A.2d at 325:

> If the receipts surpass the expenditures, the excess inures to no private benefit but remains for the use of the school in its operations and expansion program. The School has well argued that to hold that because the receipts for a given period exceed the expenditures this nullifies the tax exemption would be to penalize efficiency and to cause the school's eligibility for exemption to vary from year to year.

Accordingly, I would conclude that the Devereux Foundation is a charity under the provisions of Article VIII, Section 2 of the Constitution of Pennsylvania and Section 204 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204, and that it is entitled to a property tax exemption under the holding of *Vanguard School Tax Exemption Case, supra.* Therefore, I would reverse the trial court and grant the exemption.