In Re: Appeal of Doctor's Hospital, a Non-Profit Corporation, Now Known as The Podiatry Hospital of Pittsburgh, Pa., From the Decision of The Board of Property Assessment, Appeals and Review of Allegheny County, Against Property Situate in the 8th Ward of The City of Pittsburgh, Allegheny County, Pa. Doctor's Hospital, a Non-Profit Corporation, Now Known as The Podiatry Hospital of Pittsburgh, Pa., Appellant.

32

Argued December 4, 1979, before Judges Crumlish, Jr., Mencer, DiSalle, Craig, and MacPhail. President Judge Bowman and Judges Wilkinson, Jr., Rogers, and Blatt did not participate.

*Harvey E. Robins, Brennan, Robins & Daley,* for appellant.

*Dante R. Pellegrini,* Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee.

Opinion by Judge Crumlish, Jr., April 25, 1980:

This issue is whether Doctor's Hospital (Doctor's) now known as The Podiatry Hospital of Pittsburgh, a

Pennsylvania non-profit corporation, has been founded, endowed and maintained to a sufficient degree by public and private charity to entitle it to a property tax exemption.

The property in question consists of five separate plots assessed at $208,850 for the main parcel containing the hospital building[1] and $2,100 for each of the four adjoining parking lots.[2] Real estate tax was paid on each of these properties up to and including 1975. In 1976 Doctor's appealed the assessments requesting real estate tax exemption on all lands and buildings occupied and utilized by the hospital. The Board of Property Assessment, Appeals and Review denied the request.

A de novo appeal was taken to the Common Pleas Court of Allegheny County which determined that the exemption had been properly denied. We affirm.[3]

Doctor's claims exemption pursuant to Article VIII, Section 2 of the Constitution of the Commonwealth of Pennsylvania[4] and Section 204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204.[5]

---

[1] Lot & Block 84-A81.

[2] Lot & Block 84-A-117-119 and 121.

[3] By stipulation the parties have agreed that the status of the main property containing the hospital building is determinative of the four surrounding parcels.

[4] (a) The General Assembly may by law exempt from taxation:

. . . .

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

[5] (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax to wit:

. . . .

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevo-

It contends that owing to its non-profit corporate structure status as a teaching institution[6] and ongoing operation as a podiatric hospital and clinic entirely free from private profit motive, it is entitled to the real estate tax exemption granted institutions of ''purely public charity.''

Liability of real estate for taxation is the rule, and the taxpayer has the burden of bringing itself within the ambit of the exception. *In Re: Appeal of Marple Newtown School District,* 39 Pa. Commonwealth Ct. 326, 395 A.2d 1023 (1978); *Robert Morris College v. Board of Property Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. 648, 291 A.2d 567 (1972). The taxpayer must affirmatively show that the entire institution is one of "purely public charity," founded by public or private charity and maintained by public or private charity. *Woods Schools Tax Exemption Case,* 406 Pa. 579, 178 A.2d 600 (1962). The resolution of whether an institution is a "purely public charity"

---

lence or charity, including fire and rescue stations, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof and for no other purpose.

[6] In 1974, Doctor's Hospital established a residency program for the purpose of training doctors in the field of podiatric medicine. It contends as a result that it is a teaching institution and therefore qualified for real estate tax exemption. We fail to see the merit of this argument. While it is true that teaching institutions have in several instances been granted real estate tax exempt status, *see Point Park Junior College v. Board of Property Assessment,* 23 Pa. Commonwealth Ct. 367, 351 A.2d 707 (1976); *Vanguard School Tax Exemption Case,* 430 Pa. 378, 243 A.2d 323 (1968), the mere instance of a teaching program is not sufficient to render an institution a "purely public charity" within the meaning of the constitution.

is a mixed question of law and fact and each case must be decided on its unique factual composition.

Doctor's Hospital was founded and erected in 1943 as a non-profit general hospital consisting of a 40-man medical and surgical staff affording medical care to the sick, injured, disabled and indigent. In 1974, because of declining patients and lack of ability to attract physicians, Doctor's became a podiatric hospital in hopes of attracting additional business through increased admissions by podiatrists. Only one other comprehensive podiatric facility existed in the Pittsburgh area at the time of the conversion.

Revenues before and after conversion were and are derived, except for de minimis amounts, from Blue Cross/Blue Shield, Medicare/Medicaid or third-party payers as well as self-pay patients. In 1975, for instance, the total income of Doctor's was about $1 million with 15% coming from Medical Assistance, 25% from Medicare and 48% to 49% from Blue Cross and Blue Shield.

Doctor's receives no substantial charitable contributions. All patients are charged regardless of ability to pay. Fees which are not recovered are written off as bad debts.

Revenues derived from the operation of the hospital are applied to its support and to increase its efficiency and facilities. Officers of the hospital and members of the Board of Trustees serve without compensation. No doctor maintains his private office at the hospital or receives a salary. Salaries paid to support personnel, such as nurses and maintenance employees, are equal to those in similar situations and are by no means excessive. The Articles of Incorporation prohibit the use of net earnings for the benefit of any officers or private individuals.

Doctor's is recognized by the United States Department of Health, Education and Welfare as a fa-

cility which meets the requirements for participation as a hospital under the Health Insurance Benefits Program for the Aged and Disabled, Title 18 of the Social Security Act. It is also classified as a charitable organization by the Internal Revenue Service and the Commonwealth of Pennsylvania, Department of Revenue, Bureau of Sales and Use Tax.

Doctor's argument in chief in pressing its claim for the exemption is based on its clinic, wherein it contends that podiatric care is rendered to members of the community without charge. In particular, it points out that staff physicians contribute approximately $100,000 per year in clinic-related services which should be considered "charitable contributions" when determining its tax status.

As a prerequisite for real estate tax exemption, an institution claiming to be charitable must demonstrate that the portion of its property for which exemption is claimed possessed an eleemosynary characteristic not possessed by an institution devoted to private gain or profit.

" 'What is "given" must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered.' " *Ogontz School Tax Exemption Case*, 361 Pa. 284, 294, 65 A.2d 150, 154 (1949), cited in *Robert Morris College v. Board of Property Assessment, Appeals and Review, supra,* at 658, 291 A.2d at 573. There must be facts which justify a finding that the "actual use and occupation" of the premises is primarily for the designated charitable object and not largely for commercial purposes. Article VIII, Section 2 of the Constitution of Pennsylvania; *Lanchester Medical Center Appeal,* 23 Pa. Commonwealth Ct. 596, 353 A.2d 75 (1976).

After careful review of the record, we must conclude that Doctor's has failed to meet its heavy burden of proof.

The clinic was established in 1974 with the intent and purpose of providing comprehensive podiatric care and *attracting additional patients*.[7] Further, while it is true that no doctor serving at the clinic receives compensation directly from the hospital and that diagnostic services are rendered free of charge, if any *treatment* is necessary, the patient is charged regardless of his ability to pay and the doctor is compensated for his services either directly by the patient or by a third party, *i.e.*, Blue Cross/Blue Shield.

Hospital space and supplies for the clinic are supplied by Doctor's. In 1975 the total cost of operation for the clinic was $11,000, approximately $11,198 was billed to patients for services. Therefore, notwithstanding a percentage of this being written off as bad debt, the monies charged were a quid pro quo for the services rendered.

Nor may we classify Doctor's as a "purely public charity" simply because its staff physicians render diagnostic services at the clinic free of charge. First, there is some question as to whether services are in fact rendered by the doctors with a charitable intent or as a means of obtaining additional patients. Second, though an enterprise may be commendable and involve the "generous contribution of much time and effort on the part of many public spirited people," it does not therefore automatically possess those eleemosynary characteristics essential to classification as a "purely public charity." *Metropolitan Pittsburgh*

---

[7] Q. Just a few questions. Wasn't the podiatry clinic at Doctor's Hospital to increase revenues?

A. It was instituted because we thought it would bring us in patients.

. . . .

Q. You were going to lose money?

A. We weren't going to lose money, but we were going to give some free services in return for what we were going to receive [referring to increased patients].

*Non-Profit Housing Corp. v. Board of Property As-sessment,* 480 Pa. 622, 391 A.2d 1059 (1978).

This is evident when we consider the philosophy underlying the constitutional authorization for the exemption.

> 'Taxes are not penalties, but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. There are substantial reasons why an institution wholly devoted to public charity should be exempt from taxation, . . . *Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a "quid pro quo" for its services in providing something which otherwise the government would have to provide. . . .* The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities. It is therefore just that an institution which assumes pro tanto the taxpayer's burden should be relieved of its own tax burden.' (Emphasis in original.)

*Y.M.C.A. of Germantown v. Philadelphia,* 323 Pa. 401, 413-14, 187 A. 204, 210 (1936), as cited in *In Re: Appeal of Marple Newtown School District,* 39 Pa. Commonwealth Ct. 326, 329-30, 395 A.2d 1023, 1025 (1978).

Doctor's final argument in support of tax exemption is that like the *Vanguard School Tax Exemption*

*Case,* 430 Pa. 378, 243 A.2d 323 (1968), it provides a unique and essential service (comprehensive podiatric care) not otherwise available to the community and, thereby relieving the government of the responsibility of providing such service, qualifies as a "purely public charity."

In *Vanguard, supra,* the students suffered from physical and emotional disorders necessitating special educational attention. The Court concluded that Vanguard was a purely public charity because it provided essential emotional support and educational services its beneficiaries could not provide for themselves or receive elsewhere. The Commonwealth of Pennsylvania specifically recognized the need for these services and subsidized the educational costs. Moreover, although each child paid tuition and there was little scholarship aid, a substantial part of each child's education was subsidized by private charitable donations.

In this case, while there is no other comprehensive podiatric clinic in the Pittsburgh area, podiatric care is available at almost every major hospital. In addition, medical doctors and osteopathic physicians are qualified to treat foot pathologies and to perform podiatric surgery. Therefore, unlike *Vanguard, supra,* there are other avenues available by which recipients in need of treatment may secure the necessary services. Finally, no patient is treated free of charge and there are no significant private or public charitable contributions which underwrite even in part the cost of patient services.

In conclusion, while it cannot be disputed that Doctor's Hospital provides a needed service, "the usefulness of an enterprise is not sufficient basis for relief from the burden of sharing essential costs of local government." *In Re: Appeal of Marple Newtown School District, supra,* at 336, 395 A.2d at 1028.

40

Accordingly, we

ORDER

AND Now, this 25th day of April, 1980, the order of the Court of Common Pleas of Allegheny County denying a real estate tax exemption to Doctor's Hospital, now known as The Podiatry Hospital of Pittsburgh, is affirmed.

Judge MACPHAIL dissents.

President Judge BOWMAN and Judge DISALLE did not participate in the decision in this case.