482 A.2d 228

Lucille Lalmant DEIGENDESCH and Jean Lalmant Leighton, Appellants/Appellees,

v.

COUNTY OF BUCKS, Board of Assessment of the County of Bucks, Township of Upper Southampton and Centennial School District Board of Assessment of the County of Bucks, Appellees/Appellants.

BUCKS COUNTY BOARD OF ASSESSMENT APPEALS, Appellant,

v.

FEENEYS NURSERY, INC., Appellee.

Supreme Court of Pennsylvania.

Argued April 10, 1984.

Decided Sept. 27, 1984.

556

Robert F. Ruehl, Albert L. Blackman, Jr., Doylestown, for appellants/appellees at Nos. 121 & 122.

Martin J. King, Sol., for appellants/appellees at Nos. 121, 122 & 126.

John Philip Diefenderfer, Newtown, for Centennial Sch. Dist. at Nos. 121 & 122.

William T. Renz, Doylestown, for Feeneys Nursery, Inc. at No. 126.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-
MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

LARSEN, Justice.

In this consolidated appeal of first impression, we are
called upon to interpret the Act of 1966, Jan. 13, P.L. (1965)
1292, § 1, *et seq.*, as amended, 16 P.S. § 11941, *et seq.*
commonly referred to as Act. 515.[1] The relevant provisions
of the act in question provide:

**Covenant for farm, forest, water supply or open
space uses**

All counties of the first, second, second A, third or
fourth class are hereby authorized to enter into covenants
with owners of land designated as farm, forest, water
supply, or open space land on an adopted municipal,
county or regional plan for the purpose of preserving the
land as open space. Such covenants and extensions
thereof shall take effect upon recording in the office of
recorder of deeds. The land owner may voluntarily cove-
nant for himself and his successors and assigns in right,
title and interest that the land will remain in open space
use as designated on the plan for a period of ten years
commencing with the date of the covenant. The county
shall covenant that the real property tax assessment, for
a period of ten years commencing with the date of the
covenant, will reflect the fair market value of the land as
restricted by the covenant. The board to which assess-
ment appeals are taken shall take into consideration the
covenant's restriction upon the land in fixing the assess-
ment.

1966, Jan. 13, P.L. (1965) 1292, § 3, as amended 1967,
Dec. 21, P.L. 882, No. 395, § 1; 1972, Oct. 26, P.L. 1030,
No. 254, § 2. 16 P.S. § 11943.

**1.** Officially the act is titled: "An Act enabling certain counties of the
Commonwealth to covenant with land owners for preservation of land
in farm, forest, water supply, or open space uses."

**Breach of covenant by land owner**

If the land owner, his successors or assigns, while the covenant is in effect, alters the use of the land to any use other than that designated in the covenant, such alteration shall constitute a breach of the covenant and the land owner at the time of said breach, shall pay to the county, as liquidated damages, the difference between the real property taxes paid and the taxes which would have been payable absent the covenant, plus compound interest at the rate of five percent per year from the date of entering the covenant to the date of its breach or from a date five years prior to the date of its breach whichever period is shorter. Such liquidated damages shall be a lien upon the property collectible in the manner provided by law for the collection of unpaid real property taxes. The acquisition by lease, purchase or eminent domain, and use of rights of way or underground storage rights in such land by a public utility or other body entitled to exercise the power of eminent domain shall not constitute an alteration of use or a breach of covenant. 1966, Jan. 13, P.L. (1965) 1292, § 6. 16 P.S. § 11946.

Each of the cases *sub judice* involve a landowner, who by covenant with Bucks County, agreed to preserve his land in uses as designated by Act 515, subject to the terms and conditions of the Act and the Bucks County Declaration of General Conditions for Covenants.[2] In each case, after the covenant was made, but before the covenant had expired, the land was subdivided and a portion conveyed. The subdivision and conveyance in each case resulted in destroying the common ownership of the land which had originally prevailed at the time of the making of the covenant.

In the *Feeneys Nursery* case the land in question was to be preserved as "farm land". Act 515 defines farm land as:

2. Pursuant to and under the authority of Act 515, Bucks County adopted a "Declaration of General Conditions for Covenants under Act 515". The declaration recited that Bucks County had adopted a plan for implementation of Act 515 and set forth the statutory rights and duties of the landowner and the county.

Any tract or tracts of land *in common ownership* of *at least twenty acres in area,* used for the raising of livestock or the growing of crops. (emphasis supplied)

In the *Deigendesch* case, the subject land was to be preserved in "open space land" and "farm" uses. Act 515 defines open space land as:

Any land, including farm, forest and water supply land, *in common ownership,* of *at least ten acres in area,* in which site coverage by structures, roads and paved areas does not exceed three percent. Open space land includes land the restriction on the use of which could (i) conserve natural or scenic resources, including but not limited to soils, beaches, streams, wetlands, or tidal marshes; (ii) enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations, or other public open spaces; (iii) augment public recreation opportunities; (iv) preserve sites of historic, geologic, or botanic interest; (v) promote orderly urban or suburban development; or (vi) otherwise preserves open space without structures, roads and paved areas exceeding three percent of site coverage. (emphasis supplied)

# I.

## Feeneys Nursery, Inc., Appellee

■ In August, 1972, pursuant to Act 515, Robert Clayton and Marion Clayton, predecessors in title to appellee, Feeneys Nursery, covenanted with Bucks County to maintain the 76.39 acre subject tract as farmland. As a result of the covenant, the property owners benefited by the preferential tax assessment provided for by the Act. In November, 1979, the appellee sold and conveyed a 5.4 acre parcel carved out of the original 76.39 acre tract. At or about the time of the sale, Bucks County Board of Assessment Appeals, appellant, determined that the conveyance breached the Act 515 covenant and assessed rollback taxes [3] back to

___

3. In the context of this case, rollback taxes means, "[T]he difference between the real property taxes paid and the taxes which would have

1972 when the covenants were originally executed.[4] The rollback tax assessment was paid out of a sum escrowed for that purpose at the closing. The appellee then filed an appeal to recover the back taxes paid. The trial court found that a change in ownership brought about by a conveyance of a portion of the tract does not breach the covenant, so long as the land is maintained in the physical use for which it was covenanted.[5] The Commonwealth Court agreed with the trial court's conclusion and affirmed.[6]

The appellant Board argues that under Act 515 there are two essential requirements to qualify for preferential tax treatment: (1) the land must be in common ownership; and (2) the land must meet the requisite minimum acreage provided by the statute. Appellant contends that when the land in question was subdivided and a portion not meeting the minimum acreage requirements was conveyed, both of the statutory essentials were violated.

The appellee, on the other hand, argues that since the physical use of the land did not change at the time of or after the sale, no breach occurred and the tract still qualifies for preferential tax treatment.

been payable absent the covenant ..." Act 515 mandates this sum plus compound interest at the rate of five percent per year be paid to the county as "liquidated damages" when there is a breach of covenant. (16 P.S. § 11946).

4. The assessment of rollback taxes to 1972 made by the Board exceeded the authority granted by Act 515. Section 6 of the Act (16 P.S. § 11946) provides that rollback taxes plus five percent compound interest shall be assessed "from the date of entering the covenant to the date of its breach or from a date five years prior to the date of its breach whichever period is shorter." Here, the alleged breach occurred in November, 1979, therefore, the rollback taxes should have been assessed from a date five years prior to the breach and not from the date of the covenant.

5. The chief assessor for the County of Bucks testified that he was not aware of any change in the physical use of the property. James Feeney, President of the appellee corporation testified that the entire tract of land is still used for agricultural purposes.

6. 73 Pa.Cmwlth. 488, 458 A.2d 657 (1983).

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

Statutory Construction Act of 1972, Dec. 6, No. 290, § 3, 1 Pa.C.S.A. § 1921.

"[T]he General Assembly intends to favor the public interest as against any private interest."

*Id.,* 1 Pa.C.S.A. § 1922.

The obvious intent of the legislature in enacting Act 515 was to preserve farms, forests, water supplies and open spaces in the Commonwealth. To encourage this end counties are authorized to extend a tax benefit in the form of a lower assessment to owners of such lands who covenant to preserve the land in an undeveloped state for at least a period of 10 years. The Act is specific as to the land that qualifies for the special tax treatment. "Farm land" must be *at least twenty acres* in area; it must be in *common ownership;* and it must be used for growing crops or raising livestock. A tract of land which meets these basic requirements is eligible, under Act 515, for the preferential tax assessment that becomes lawful upon the execution of a covenant.

█ It is a rule of statutory construction that a statute which exempts persons or property from taxation must be strictly construed. *See: Lehigh Valley Co-op Farmers v. Commonwealth of Pennsylvania,* 498 Pa. 521, 447 A.2d 948 (1982). Statutes providing exemptions from taxation are strictly construed against the taxpayer. *See: West Allegheny Hospital v. Board of Property Assessment, Appeals and Review of Allegheny County,* 63 Pa.Cmwlth. 555, 439 A.2d 1293 (1981).

█ Although literally, Act 515 is not a statute exempting persons or property from taxation, it is an Act which sanctions an arrangement for the preferential reduction of taxes. In a sense, the Act does exempt a portion of the real estate taxes on those qualified lands that are covenanted

for designated statutory uses. Absent the statute, the assessment would be higher and the taxes due correspondingly greater. Accordingly, we are constrained to strictly construe Act 515 against the taxpayer.

 The land in question here was made subject to a covenant to preserve it as farmland pursuant to Act 515. At the time of the covenant, the tract consisted of 76.39 acres and was in common ownership. The common ownership was subsequently transferred by the original covenantors to the appellee. The Act contemplates that the entire tract covenanted will remain continually eligible for special tax consideration by preserving the integrity of each of the essential qualifications during the term of the covenant. All of the statutory requirements which make the land eligible in the first instance must continue until the expiration of the covenant. A change in any of the requirements during the term of the covenant constitutes a breach in the sense that the property which is the subject of the covenant is no longer qualified under the Act. One of the essential requirements is that the tract must be in common ownership. During the period of the covenant it must remain in common ownership, otherwise a landowner could obtain preferential tax treatment for a qualified tract which exceeds the acreage requirement and then, with impunity, subdivide the land into parcels smaller in area than is required by the Act. This is plainly contrary to the intent of the Act. The only exception provided by Act 515 is where part or all of the land is:

"[A]cquired by lease, purchase or eminent domain, and use of rights of way or underground storage rights in such land by a public utility or other body entitled to exercise the power of eminent domain...." 16 P.S. § 11946

 We conclude that when the appellee sold and conveyed 5.4 acres out of the 76.39 acre tract, the covenant was breached and the owner became subject to pay the rollback

taxes and interest as provided by Act 515.[7] The order of the Commonwealth Court is reversed.

## II.
### Deigendesch and Leighton, Appellants

In 1972, Eugene Lalmant and the County of Bucks entered into a contract and covenant pursuant to the provision of Act 515 whereby Eugene Lalmant covenanted his 28.5 acres of land for designated statutory uses. Mr. Lalmant died in 1975 leaving a will which devised the land to his widow, Alberta M. Lalmant. Mrs. Lalmant died in 1976 leaving a will wherein she devised the covenanted land to appellants. During the administration of the estate of Albert M. Lalmant the subject property was subdivided. Approximately 4.5 acres were conveyed to Lucille Lalmant Deighendesch and the remainder was conveyed to the appellants[8] jointly.

The appellee, Board of Assessment of Bucks County, determined that the subdivision and conveyance constituted a breach of the covenant and assessed appellants for roll-back taxes and interest in accordance with Act 515. The appellants were notified of the assessment by letter of

7. In 1974, the Legislature passed the "Pennsylvania Farmland and Forest Land Assessment Act of 1974." (1974, Dec. 19, P.L. 973, No. 319) Under this Act, provision is made for an owner to subdivide a tract receiving a preferential tax assessment without incurring the penalty for breach as provided in Act 515. The land owner may "split-off" up to two acres annually and the land so "split-off" may only be used for residential, agricultural or forest reserve uses. A residential dwelling constructed on such land may only be occupied by the person to whom the parcel is transferred. Further, the total parcel or parcels so split-off shall not exceed ten percent or ten acres, whichever is lesser, of the entire tract subject to preferred tax treatment. (72 P.S. § 5490.6).

Additionally, Section 10 of the Act provides that a landowner who has covenanted with a county under the provisions of Act 515 may renegotiate such Act 515 agreements to make them conform to the provision of this Act as to preferential assessment. (72 P.S. § 5490.-10). The appellee landowner in this case chose not to exercise the option granted by Act 319.

8. The appellants, Lucille Lalmant Deigendesch and Jean Lalmant Leighton are sisters and the daughters of the decedent.

September 19, 1979. The letter also informed the appellants that the assessment may be appealed within thirty days. No appeal was filed by the appellants.

On April 25, 1980, appellants initiated a declaratory judgment action seeking to have the court declare that the new assessment was contrary to law. The appellee Board filed preliminary objections to strike the complaint and to quash. The trial court overruled the objections, concluding that the subdivision did not breach the covenant. On appeal, the Commonwealth Court held that the trial court should have dismissed the suit because the court lacked jurisdiction to entertain the action.[9]

The Commonwealth Court correctly decided that the trial court erred in determining that it had jurisdiction in this case. The Declaratory Judgments Act, 42 Pa.C.S.A. § 7541(b) provides that:

"[T]he remedy provided by this [Act] shall be additional and cumulative to all other available remedies except as provided in subsection (c)."

Subsection (c), 42 Pa.C.S.A. § 7541(c) provides:

"Relief shall not be available under this subchapter with respect to any:

(2) Proceeding within the exclusive jurisdiction of a tribunal other than a court.

(3) Proceedings involving an appeal from an order of a tribunal."

By statute,[10] review of a tax assessment, rollback or otherwise, is a proceeding within the exclusive jurisdiction of the Board of Assessment Appeals.[11] It has been held that the statutory remedy is mandatory and exclusive. *See: Appeal of Cedarbrook Realty, Inc.,* 39 Pa.Cmwlth. 150, 395 A.2d 613 (1978). If the appellants wanted to challenge the rollback tax assessment, an appeal to the

**9.** 73 Pa.Cmwlth. 488, 458 A.2d 657 (1983).

**10.** *See:* 72 P.S. § 5349, and 72 P.S. § 5350.

**11.** The Commonwealth Court correctly determined that the Board is a tribunal within the meaning of the Declaratory Judgment Act.

Board was the exclusive procedure.[12] Accordingly, the trial court lacked jurisdiction to hear the Declaratory Judgment Action.[13] The order of the Commonwealth Court is affirmed.

FLAHERTY, J., files a concurring opinion.

PAPADAKOS, J., files a concurring and dissenting opinion in which McDERMOTT, J., joins.

FLAHERTY, Justice, concurring.

I join the majority's Opinion in No. 121, but reluctantly concur in the result only in No. 126.

Act 515, as Mr. Justice Larsen points out, is entitled:
An Act enabling certain counties of the Commonwealth to covenant with land owners for preservation of land in farm, forest, water supply, or open space uses.

When we turn to § 11941 for the definitions of the key terms, "farm," "forest," "water supply," and "open space," we learn that each of these types of land use except water supply land is characterized by certain minimum acreage requirements and also by "common ownership." Thus, it is reasonable to conclude, as Mr. Justice Larsen does, that when land is held in farm, forest or open space use under covenant entered into pursuant to this act, the land, by definition, must meet the requirements of common ownership and the applicable minimum acreage.

On the other hand, such requirements do nothing to promote the purpose of the act, which is specified as "preserving the land in the designated use." 16 P.S. § 11943. Plainly stated, the legislature intended to encourage the preservation of farm, forest, open space and water supply land by allowing for a reduction of taxes on this land if the

12. All property owners shall have the right to appeal any new assessment value within thirty days of receipt of notice and each notice shall so state. 72 P.S. § 5349(g)(2).

13. The County of Bucks, et al. filed a cross-appeal in this case seeking review of the question raised in the Feeney's Nursery appeal. Because of the disposition we make in the appeal of Lucille Lalmant Deigendesch, et al., we do not reach the issue raised in the cross-appeal.

owners were to agree to preserve the designated use for a certain period of time. Preserving land use in this manner, however, has no necessary relationship to ownership or size of these parcels. In fact, if an owner held land under covenant, maintaining the land in farm use, and sold a small parcel of the land to another, it should be irrelevant under the act whether the plot under covenant is owned by one or more persons, providing that the new owner of the small parcel were to maintain the farm use. Common ownership and a certain minimum acreage requirements may be relevant to entering into the covenants, for purposes of administrative convenience, but after the covenants have been executed, these matters are irrelevant to the purpose of the act.

Moreover, this understanding of the act, which focuses on its purpose, is supported by the act's own definition of breach of the covenant:

### § 11946. Breach of covenant by land owner

If the land owner, his successors or assigns, while the covenant is in effect, *alters the use* of the land to any use other than that designated in the covenant, such alteration shall constitute a breach of the covenant....

Far from providing that the land may not be aliened, the act in this and in other sections provides that the covenant binds not only the owner, but his successors and assigns, and provides specifically that the covenant is breached by a change in use, not by a change in ownership. In terms of the purpose of the act, what conceivable difference can it make, once the covenant is entered into by the common owners of a parcel of the required acreage, if ownership changes but the use remains the same?

These observations notwithstanding, I am compelled to agree with the result reached by Mr. Justice LARSEN because of the manner in which the act defines the permitted uses. I do not think that the result in this case is what the legislature intended, but it seems to be required by what they wrote.

PAPADAKOS, Justice, concurring and dissenting.

I join in the Majority's Opinion in No. 121 E.D. Appeal Docket 1983, but I vigorously dissent with the result and the reasoning of No. 126 E.D. Appeal Docket 1983. The Majority Opinion completely ignores the obvious intent of Act 515. The clear purpose of the Act is to allow for covenants "preserving land uses" not land ownership. The Section of the Act covering breach of the covenant by a land owner makes it clear that it is an altered *use* and not a change in the status of ownership which will breach the covenant.

Section 6 of the Act, 16 P.S. § 11946, Breach of Covenant by Land Owner, states that a breach occurs only:

If the land owner, *his successors or assigns,* while the covenant is in effect, *alters the use* of the land to any use other than that designated in the covenant. (emphasis added)

By adopting this language, the Legislature envisioned that a land owner might assign or convey his property; however, the covenant would run with the land and bind any successors or assigns to the use of the land as designated in the covenant. The purpose of this Act is expressed in the title, which states:

An Act enabling certain counties of the Commonwealth to covenant with land owners for preservation of land in farm, forest, water supply, or open space *uses.* (emphasis added)

Thus, it makes no difference who owns the land or in what manner ownership is held. As long as the use remains unchanged and the owner preserves the land as farm, forest, water supply or open space land, he is in compliance with the Act.

There is no reason why this rationale should not apply to a change of ownership when only a portion of the land is conveyed. The new owner will have the same rights and liabilities as the original owner since he will be bound by the same use as designated in the original covenant.

Furthermore, the Majority misconstrues the term "common ownership" as used in the Act. Common ownership means that two or more adjoining land owners whose land, individually, does not meet the acreage requirement can band together and covenant that their collective lands be preserved as farm, forest, water supply or open space land. This definition of common ownership is the only one that carries out the intent of the Act, which is to preserve land *use.* In sum, it does not matter who or how many persons own the land or what kind of interest they own, as long as there are twenty acres used and being preserved as farm land.

Therefore, I would hold that the covenant was not breached by Feeneys Nursery since the use of the land, as designated in the covenant, remained unchanged.

McDERMOTT, J., joins in this concurring and dissenting opinion.