**Norman P. ZARWIN and Marlene Zarwin, Appellants,**

v.

**MONTGOMERY COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Feb. 19, 2004.

---

**38.** 63 P.S. § 818.13(a).

Phyllis M. Parker, Philadelphia, for appellants.

Richard A. Sprague, Philadelphia, for appellee.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Norman P. Zarwin and Marlene Zarwin (Taxpayers) appeal the order of the Court of Common Pleas of Montgomery County (trial court) sustaining Montgomery County's (County) preliminary objection and dismissing their complaint. Taxpayers filed a class action to enforce the terms of an agreement with the County with respect to their obligations for the Pennsylvania county personal property tax (PPT) for certain years. The trial court dismissed the action because Taxpayers had failed to exhaust administrative remedies before the Montgomery County Board of Assessment Appeals (Board).

This case has its origins in litigation initiated to challenge certain provisions in the Act of June 17, 1913, P.L. 507, *as amended*, 72 P.S. §§ 4821–4902, commonly known as the County Personal Property Tax Law (Law).[1] The Law created a tax exemption for stock in Pennsylvania corporations, and consistent with that exemption the County enacted a personal property tax excluding Pennsylvania corporate stocks. In 1997, the constitutionality of the Law was challenged. In *Walter H. Annenberg v. Commonwealth*, 562 Pa. 581, 757 A.2d 338 (2000) (*Annenberg I*), our Supreme Court held that the Law's preferred treatment of Pennsylvania corporations violated the commerce clause of the

---

1. Act of June 17, 1913, P.L. 507, *as amended*, 72 P.S. § 4821. Section 1.1 of the Law, added by the Act of April 18, 1978, P.L. 56, 72 P.S. § 4821.1, authorized the county commissioners to impose and collect the tax described in section 1 of the Act. Under the 1978 amendment, counties were authorized to retain all revenues collected; previously, counties that enacted the Law shared the revenue generated therefrom with the Commonwealth.

United States Constitution. However, the Supreme Court struck down only that statutory provision creating this preference; the remaining provisions of the Law were left intact. Accordingly, counties were able to tax residents on the total value of their corporate investments, but without regard to the location of the corporation.

In implementing the *Annenberg* decision, the County had the option to increase the PPT obligation where it had been previously reduced by virtue of the taxpayer's investments in Pennsylvania corporations. Instead, the County developed a Mutual Release, which was offered to all residents and accepted by 55,000 residents. The taxpayer signing the Mutual Release,[2] agreed not to seek a refund or credit of PPT payments for the years 1993 through 1996 in exchange for the County releasing the taxpayers from having to make additional PPT payments recalculated to include the value of Pennsylvania corporate stock. Of the approximate 55,000 residents who signed the Mutual Release, most had already paid the PPT for the years 1993 through 1996; however, over 1,000 taxpayers who executed the Mutual Release had not yet paid their 1996 PPT.

On April 5, 2002, the County sent Taxpayers an invoice for their 1996 PPT, cal-culated on the value of stock held in foreign corporations. In response, Taxpayers sent a letter to the Montgomery County Tax Claims Bureau to protest the PPT invoice, stating their position that the Mutual Release they had excused them from any "additional payment" for the years 1993 through 1996. The County explained that the Mutual Release was intended to release taxpayers from the payment of additional tax on previously exempt stock, *i.e.*, that held in Pennsylvania corporations. It was not intended to release taxpayers from having to pay the PPT on stock held in non-exempt corporations.

 On May 24, 2002, Taxpayers filed a single count class action complaint against the County alleging a breach of the terms of the Mutual Release in attempting to collect the PPT for the year 1996 on non-exempt stock. As a result of this alleged breach, Taxpayers sought equitable relief that would enjoin the County's collection of the 1996 PPT and order the County to remove any taxpayer liens it may have filed in connection with the 1996 PPT. They also sought an award of damages to any members of the class that paid the 1996 PPT. The County filed preliminary objections, which the trial court sus-

---

**2.** The Mutual Release was a preprinted form drafted by the County. The terms and conditions of the Release executed by all residents were identical and contained two main provisions:

NOW THEREFORE, in consideration of and reliance on the representations and mutual promises and covenants contained herein and intending to be legally bound, the Taxpayer and County agree as follows:

1. For and in consideration of the County's agreement to release and discharge Taxpayer from any liability to pay any additional Personal Property Tax for the years 1993–1996 inclusive, Taxpayer does fully release and discharge the County from any or all causes of action, claims and demands of whatsoever kind on account of any claim that Taxpayer has or may have against the County for a refund or credit of Pennsylvania Personal Property Tax already paid for the years 1993–1996 inclusive.

2. For and in consideration for the Taxpayer's agreement to release and discharge the County from any or all causes of action, claims and demands of whatsoever kind on account of any alleged right of Taxpayer to a refund or credit of Pennsylvania Personal Property Taxes paid to the County for the years 1993–1996 inclusive, County agrees to release and discharge Taxpayer from any liability to make any additional payment of the Pennsylvania Personal Property Tax for the years 1993–1996 inclusive.

Reproduced Record 15a (R.R. ___).

tained by order dated February 21, 2003. The trial court held that Taxpayers had failed to exhaust their statutorily mandated administrative remedies before the Board, as required by Section 5.1(a) of the Law, 72 P.S. 4844.1(a)."[3] The trial court reasoned that the Law provided a "format for considering tax assessment appeals which call into question either validity of the tax itself or the ability of the taxing authority to levy and collect such a tax in accordance with the provisions of an existing agreement or contract." Trial Court Opinion at 9. Taxpayers now appeal to this Court.[4]

On appeal, Taxpayers raise two issues. First, they assert that the administrative remedy in the Law applies only where a taxpayer challenges the calculation of his PPT amount. Because Taxpayers seek to enforce the Mutual Release, the Board lacks the competence to decide the controversy. Second, taxpayers contend that the Board hearing cannot be conducted as a class action, which will result in a multiplicity of hearings and appeals. By contrast, an action in the trial court would provide the means to a global resolution of the Mutual Release.

■ It is axiomatic that a court should not exercise equitable jurisdiction where the plaintiff has an adequate remedy at law. *DeLuca v. Buckeye Coal Co.*, 463 Pa. 513, 345 A.2d 637 (1975). Taxpayers do not dispute this principle, but they assert their complaint falls within one of the recognized exceptions to this principle. Because the subject of the complaint is the meaning and application of the Mutual Release and not a "mere over assesment" claim, Taxpayers assert that they need not pursue their claim in a hearing before the

3. It provides:

> Any resident, against whom an assessment is made, may petition the board of revision of taxes, or the county commissioners, for a reassessment. Notice of an intention to file such a petition, or to appear and be heard, shall be given to the board of revision of taxes, or the county commissioners, within thirty (30) days after notice of such assessment is given or sent by the board of revision of taxes, or the county commissioners, to the taxpayers, as provided in this act. The board of revision of taxes, or the county commissioners, shall hold such hearings, as may be necessary, to hear and determine petitions for reassessment, at such places and at such times as may be determined by the rules and regulations of the board of revision of taxes, or the county commissioners, and each petitioner who has duly notified the board of revision, or the county commissioners, of an intention to file a petition for reassessment, or to appear and be heard, shall be notified by the board of revision of taxes, or the county commissioners, of the time when and the place where such hearings shall be held. All such petitions shall set forth specifically and in detail the ground, upon which it is claimed, *the assessment is erroneous or unlawful,* and

> shall be accompanied by an affidavit, under oath or affirmation, certifying to the correctness of the facts stated therein. If no petition for reassessment is filed with the board of revision of taxes, or the county commissioners, the petitioner may, in lieu thereof, appear at the hearing and present his petition orally, in which event all testimony or statements of facts shall be made under oath or affirmation.

Section 5.1(a) of the Law, added by the Act of July 3, 1947, P.L. 1249, 72 P.S. § 4844.1(a) (emphasis added).

4. The scope of review of an order of the trial court sustaining preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its discretion or committed an error of law. The court must accept as true all well-pleaded allegations of material fact in the complaint as well as any inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Larry Pitt & Associates v. Long,* 716 A.2d 695 (Pa. Cmwlth.1998). However, this principle does not require the Court to accept conclusions of law expressed in the complaint. *Penn Title Insurance Co. v. Deshler,* 661 A.2d 481 (Pa. Cmwlth.1995).

Board. In support, they direct this Court to *Pentlong Corp. v. GLS Capital,* 573 Pa. 34, 820 A.2d 1240 (2003) and *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974).

In *Borough of Green Tree,* our Supreme Court considered an action filed to challenge the constitutionality of Section 7 of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. 5452.7. The plaintiffs asserted that the nature of their constitutional claim was such that their administrative remedy was not only inadequate but its pursuit would work irreparable harm.[5] Our Supreme Court agreed, but at the same time laid down guidelines for determining when a statutory remedy must be pursued and when not. The Court explained that

> [w]e are of the view ... that the mere fact that a constitutional question is raised as to the validity of a statute does not, without more, vest jurisdiction in a court of equity to adjudicate.

459 Pa. at 276, 328 A.2d at 823. Further, the Court acknowledged that it is the legislature's prerogative to channel litigation that arises from a statute, including questions of a constitutional nature. Nevertheless, a direct, frontal attack on the constitutionality of a statute may relieve a litigant from having to exhaust administrative remedies. The Supreme Court explained as follows:

> The more clearly it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its special-

ized fact-finding function or application of its administrative expertise.

459 Pa. at 281, 328 A.2d at 825.

In *Pentlong,* the Supreme Court held that taxpayers could proceed in equity to challenge the collection practices of a private entity that had purchased 125,000 tax liens from the taxing authority. The taxpayer plaintiffs had available to them the statutory remedy of *scire facias* to determine the amount due on a lien and to show why the lienholder should not be allowed to execute on their property. The plaintiffs asserted that the defendants' collection practices would result in unjust enrichment, and this was a matter that could not be resolved by following the *scire facias* procedure.[6] The Court agreed and held that the extraordinary question raised in that case was analogous to a constitutional challenge to a statute; thus, plaintiffs were permitted to proceed in equity.

■ Here, Taxpayers do not challenge the constitutionality of the statute under which they received their 1996 PPT bills. They do not challenge the practices of the County in collecting the 1996 taxes, and they do not assert that the County will be unjustly enriched. Even if we were to agree that Taxpayers raise in their complaint an "important and widespread" legal question that was comparable to a constitutional question, we do not believe it to be of such significance that taxpayers should be excused from the procedures established by the legislature for litigating that question. The factfinding required to resolve Taxpayers' claim can, and should, be done by the Board. It is fully capable of determining the scope and application of the Mutual Release or any other legal

---

5. *See, e.g., Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 580, 190 A.2d 111, 116 (1963).

6. *Scire facias* provides taxpayers a vehicle for obtaining a refund from a local government, but it did not provide a vehicle for challenging the costs assessed by a private entity. Act of May 16, 1923, P.L. 207, 53 P.S. § 7184.

defense Taxpayers may raise to their 1996 PPT bill.[7] Certainly, the Board can order a complete remedy. We agree with the trial court that merely asserting "breach of contract" does not excuse Taxpayers from pursuing their statutory remedy any more than merely asserting a constitutional claim does.

■ Where a challenge is to a tax assessment or a tax exemption, the remedy is by appeal to the court of common pleas from the action of the administrative tax board. *Dougherty, Trustee v. Philadelphia*, 314 Pa. 298, 171 A. 583 (1934). The trial court's reliance upon the holding of the Pennsylvania Supreme Court in *Deigendesch v. Bucks County Board of Assessment Appeals*, 505 Pa. 555, 482 A.2d 228 (1984) was well founded. In *Deigendesch*, our Supreme Court held that a review of a tax assessment, rollback or otherwise, is a proceeding within the exclusive jurisdiction of the county board of assessment appeals and that the statutory remedy was mandatory. That holding is binding here.

■ Next, Taxpayers assert that the statutory remedy is inadequate because it does not provide for a class action that will achieve a global resolution on the interpretation and application by the County of the Mutual Release. The statutory remedy, they also assert, will require a multiplicity

of suits with the possibility of inconsistent results among the parties to the contract.[8] Because Taxpayers characterize their suit as a purely legal challenge, they argue that they have a right to bring the case directly to the court, and the additional right to bring the claim on behalf of a class as well.

■ It is well-settled that where the Legislature has provided a specific statutory remedy, the asserted need for a class action will not justify a deviation from the statutory remedy. *Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976). In *Lilian*, the Supreme Court noted that a class action is a procedural device and not a substantive right. The Court explained

> class status or the lack of it is irrelevant to the question of whether an action is to be heard in equity or at law or whether, indeed, either form is available in light of the statutory remedy. With no independent basis for equity jurisdiction [taxpayers] cannot generate it simply by alleging class status.

*Lilian*, 467 Pa. at 21, 354 A.2d at 253–54.[9] *Lilian* follows the principles set down in *School District of Borough of West Homestead v. Allegheny County Board of School Directors*, 440 Pa. 113, 118, 269 A.2d 904, 907 (1970) (emphasis in original), wherein the Supreme Court stated:

> contrast, an action in equity would provide a tidy global resolution,' the Pennsylvania Supreme Court has found the administrative remedy to be inadequate." Appellants' Brief at p. 29, quoting *Pentlong Corp.*, 573 Pa. at 44, 820 A.2d at 1246.

---

7. Section 5.1(a) of the Law, 72 P.S. § 4844.1(a), empowers the Board to determine if an assessment is "erroneous or unlawful." Taxpayers may defend against the 1996 PPT by asserting that it is either erroneous or unlawful in light of the Mutual Release

8. Taxpayers complain that "[b]ecause the statutory remedy in 72 P.S. § 4844.1 is capable of hearing only individual petitions, the court of common pleas is the better forum to economically resolve the class action dealing with identical challenges to a uniform mutual release. Thus, where the 'administrative remedy' such as 72 P.S. § 4844.1 'would result in a multiplicity of duplicative lawsuits and, in

9. *See also* Explanatory Note to Pa. R.C.P. No. 1702 "However, where a specific statutory remedy is provided for the processing of claims, numerosity of claims will not justify a class action. *See Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976). This follows the classic principle that a statutory form of relief must be followed exclusively."

[I]f the legislature provides a specific *exclusive*, constitutionally adequate method for the disposition of a particular kind of dispute, no action may be brought in any 'side' of the Common Pleas to adjudicate the dispute by any kind of 'common law' form of action other than the exclusive statutory method.

Further, a class action will not be permitted where only an individual cause of action has been recognized. *Stranahan v. County of Mercer*, 697 A.2d 1049, 1052 (Pa.Cmwlth.1997).

In *Aronson v. City of Pittsburgh*, 98 Pa.Cmwlth. 1, 510 A.2d 871, 873 (1986) this Court held that a taxpayer must first petition the taxing authority for a refund, as required by the statute, before attempting to enforce its right thereto. To allow any taxpayer to sue for a refund without first filing the petition would violate the statute. Further, the plain language of that statute only allowed for an individual to maintain an action for a refund. Thus, we held that "the Legislature has seen fit to give only the aggrieved individual the right to sue for a refund. The right is personal and may not be transferred to another by way of class action." *Id.*[10]

Taxpayers argue that their challenge to the PPT involves a breach of contract making it "ideally suited for class action treatment [because such matters] are routinely certified as class actions even where a statutory remedy exists."[11] Taxpayers'

Brief at 31. Even so, this does not eliminate the requirement that Taxpayers' tax appeal must be brought to the Board in the first instance. The right to appeal a PPT is individual, and it must be pursued individually. The trial court's decision to dismiss Taxpayers' complaint for failure to exhaust their administrative remedies was correct. The practical effect of that decision has been to deny Taxpayers the ability to pursue a class action, but that is not a reason to excuse them from the procedure established by the legislature for adjudicating their claim.

For all of these reasons, the order of the trial court is affirmed.

**ORDER**

AND NOW, this 19th day of February, 2004, the order of the Court of Common Pleas of Montgomery County dated February 21, 2003 in the above-captioned matter is hereby affirmed.

---

10. *See also Israelit v. Montgomery County*, 703 A.2d 722, 725 (Pa.Cmwlth.1997) ("Taxpayers cannot pursue their requests for tax refunds through a class action, as the statutorily prescribed refund procedure permits only individual refund claims and adequately protects Taxpayers' potential entitlement to a refund"); *Stranahan*, 697 A.2d at 1052 (same); *Hargrove v. Ehinger*, 161 Pa.Cmwlth. 306, 638 A.2d 282 (1994) (Department of Banking Code which provided the exclusive remedy for the prosecution of any claim against the

Secretary of Banking did not provide for the maintenance of class actions).

11. We do not decide whether the Mutual Release, as a matter of law, is a common law contract or an administrative order. Certainly, an order that is entered with the agreement of both the government and the private party has of elements of both contract and administrative order.